**Alvin KROEKER and Anna Mae Kroeker, Plaintiffs,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant,**

**Walter S. Goodhue, Defendant-Respondent.**

**No. 25464.**

Kansas City Court of Appeals, Missouri.

April 5, 1971.

Lester J. Vandever, Deacy & Deacy, Kansas City, for defendant-appellant.

Gerald Kiser, North Kansas City, for defendant-respondent.

CROSS, Judge.

The essential question in this case is whether an uninsured motorist insurance carrier has a right to maintain a *separate* action against an uninsured motorist to recover proceeds of a settlement made with its own insureds, who had suffered personal injuries as a result of the uninsured motorist's negligence.

The facts involved, as extracted from the pleadings, are here summarized. On May 10, 1968, plaintiffs, Alvin Kroeker and Anna Mae Kroeker, husband and wife, sustained personal injuries when an automobile operated by plaintiff Alvin Kroeker, and in which plaintiff Anna Mae Kroeker was riding as a passenger, was struck in the rear end by a motor vehicle operated by defendant Walter S. Goodhue. At that time plaintiffs were covered by a policy of automobile liability insurance, purchased from and issued by defendant State Farm Mutual Automobile Insurance Company. The policy provisions included the standard uninsured motorist clause, Coverage U of Insuring Agreement III of the policy, which obligated the insurer "To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; * * *." It is admitted that defendant Walter S. Goodhue is an uninsured motorist within the meaning of the policy terms.

On October 29, 1968, seeking recovery of their damages, plaintiffs instituted this action against defendant Walter S. Goodhue, charging in four separate counts that their injuries and loss were the result of his

negligence, and, in two separate counts, against defendant State Farm, claiming recovery under the uninsured motorist coverage provided by the policy. On November 29, 1968, defendant State Farm filed answer to plaintiffs' petition, generally denying its averments and charging plaintiffs with contributory negligence; also a separate cross-claim against defendant Walter S. Goodhue, alleging cross-claimant's entitlement to be indemnified by him for all sums which plaintiffs are found entitled to recover from cross-claimant under the uninsured motorist provision.

Thereafter, State Farm filed motions for a separate trial of its cross-claim against defendant Goodhue and for leave to intervene in plaintiffs' causes of action against defendant Goodhue set up in Counts I, II, III and IV of their petition. Both motions were sustained. As intervenor, State Farm filed answers to Counts I, II, III and IV of plaintiffs' petition, which pleaded plaintiffs' claims against defendant Goodhue. Those answers contained averments again generally denying plaintiffs' allegations that Walter S. Goodhue was an uninsured motorist and that he was guilty of negligence, and affirmatively charging plaintiffs with contributory negligence as the cause of their injuries sustained.

On October 7, 1969, State Farm made a compromise settlement with plaintiffs by paying plaintiff Alvin Kroeker the sum of $910.00 and plaintiff Anna Mae Kroeker the sum of $6,500.00, all as reflected by separate "Release(s) and Trust Agreement(s)" executed by plaintiffs. On October 14th, defendant State Farm amended its cross-claim against defendant Goodhue by alleging it had made such settlement with plaintiffs, pursuant to the uninsured motorist coverage of its policy, and that under the terms and provisions of Section 379.203, paragraph 4, of the Missouri Revised Statutes, it is entitled to recover of defendant Goodhue the aggregate of the sums paid plaintiffs, to-wit: $7,410.00. Copies of the releases and trust agreements

were attached to the cross-claim amendment.

On October 20, 1969, pursuant to stipulation and agreement on behalf of plaintiffs and State Farm, the trial court entered an order dismissing plaintiffs' cause *only* as to State Farm Mutual. The order further recited "That this cause as to defendant Walter Goodhue remains pending on the active trial docket of this court for further proceedings and orders."

On October 27, 1969, defendant Goodhue filed an amended Motion to Dismiss State Farm's amended cross-claim on grounds (1) that the releases and trust agreements executed by plaintiffs are "purported assignments of claims or causes of action involving personal injury", and (2) that the cross-claim fails to state a claim against defendant Goodhue "upon which relief can be granted." That motion was sustained and the court entered judgment of dismissal of State Farm's cross-claim as prayed. The court specifically designated the dismissal as "a final judgment for the purpose of appeal under Supreme Court Rule 82.06, V.A.M.R." State Farm has appealed.

It is State Farm's posture in this case that paragraph 4 of Section 379.203 V.A.M.S. (a statute enacted in 1967 requiring that all automobile liability policies include uninsured motorist coverage, subject to rejection by the insured) affords a remedy whereby State Farm may recover the sums paid to plaintiffs in settlement of the claim and suit against State Farm. To that end, State Farm urges that the trial court's judgment dismissing its cross-petition against defendant Goodhue be reversed and its cross-claim be reinstated "so as plaintiffs may bring their case against respondent to a conclusion or, so as appellant may present evidence as to liability of the uninsured motorist, respondent herein, and as to the nature and extent of the injuries of the plaintiffs." According to its brief, State Farm "would then attempt to recover from whatever judgment might be returned

against respondent." State Farm is unsure of the terminology of its right to recover provided for by Section 379.203; but alternatively speaks of it as "the right of 'subrogation' or 'indemnity'".

Defendant Goodhue counter-contends that Section 379.203(4) does not provide for a cause of action by the insurer against an uninsured motorist, that to permit maintenance of separate causes of action by plaintiffs and State Farm presenting identical issues would amount to "a splitting of a cause of action, which is prohibited under Missouri law", and that State Farm's attempted action on its cross-petition is based on either an assignment of a part of a personal injury claim before judgment or an "alleged" subrogation right, neither of which (so Goodhue asserts) is sanctioned by Missouri law. Goodhue concedes that Section 379.203(4) authorizes recovery by State Farm from proceeds of settlements he might make with plaintiffs or judgments rendered in their favor.

The ultimate question for our resolution thus presented, as we have heretofore stated, is whether State Farm is entitled to maintain a separate action, concurrently with plaintiffs' actions, against the uninsured motorist to recover the settlement sums it had paid plaintiffs.

Paragraph 4 of Section 379.203, upon which State Farm relies, reads as follows:

"In the event of payment to any person under the coverage required by this section, *and subject to the terms and conditions of such coverage,* the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer." (Emphasis supplied.)

Also bearing on the question at hand is the following quoted "Trust Agreement"[1] set out in the policy as one of the "Conditions" of the uninsured motorist coverage:

"16. Trust Agreement. In the event of payment to any person under this coverage:

(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights or recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made;

(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this coverage;

(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

(d) if requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event

1. The "Trust Agreement" above quoted is included in the Underwriters Standard policy form for uninsured motorist coverage. In an informative article entitled "Uninsured Motorist Insurance—Subrogation—Settlement with Tortfeasor" published in 32 Mo.Law Rev. (1967), John Z. Williams comments on the trust agreement as follows: "This device seems to have two purposes. One is to keep the insurer out of any case as a real party in interest. The other is to avoid the rule prohibiting assignment of a personal tort. Whether the latter purpose is successful depends upon whether a distinction should be drawn between assignment and subrogation."

of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith;

(e) Such person shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision."

Upon comparison, it is apparent that Section 379.203(4) is essentially the counterpart of Condition 16(a) of the policy Trust Agreement. By enacting the statute, the legislature has reiterated, as law, what the parties had agreed to by formal contract. It is expressly provided by the Trust Agreement and necessarily implied from the statute that plaintiffs are constituted trustees who covenant that they shall hold in trust, for State Farm's benefit, "all rights of recovery" incident to their bodily injuries, and that they shall faithfully endeavor to secure "such rights". Plaintiffs are further obligated (if requested) to take such action as may be necessary or appropriate to recover damages from the person responsible for their loss. It is of material significance that the Trust Agreement specifically provides "such action be taken in the name of such person(s)" (meaning plaintiffs). The separate "Release(s) and Trust Agreement(s)" which were signed by the plaintiffs to evidence the settlement are documents, as their captions indicate, in part conventional settlement releases and in part supplemental trust agreements, the terms of which are essentially repetitive of the original Trust Agreement in the policy.

As yet Section 379.203(4) has not been involved in a Missouri decision. Consequently its effect has not heretofore been determined. However, the policy Trust Agreement has been examined in at least one Missouri case—Reese v. Preferred Risk Mutual Insurance Company, Mo.App., 457

S.W.2d 205. The court there acknowledged that under the Trust Agreement the uninsured motorist insurer had "the right to be reimbursed from the proceeds of any settlement or judgment which the insured obtained from the uninsured motorist", but held that the insurer could not have proceeded against the uninsured motorist on the basis of an assignment or subrogation. This latter holding was based on the reason given that in this state an action for personal injury is not assignable, and on authority of Forsthove v. Hardware Dealers Mutual Fire Ins. Co., Mo.App., 416 S. W.2d 208 and Travelers Indemnity Co. v. Chumbley, Mo.App., 394 S.W.2d 418. Those cases involved insurers' efforts to recover, in direct actions against tort-feasors, payments made pursuant to medical coverage provided in automobile policies. In both cases the court considered that the insurers were proceeding under attempted but void assignments and disallowed the insurers' actions on the ground that personal injury actions were not assignable.

The legal aspects of the instant case are materially different from those attending the decision in Reese. Section 379.203(4) was enacted subsequently to the time that case originated, but was in force when the policy here considered was issued and this case arose, and its effect has vital impact on the question before us. There can be no doubt that Section 379.203(4) has provided the insurer *some* right of recovery under the circumstances here involved. An understanding of its nature and means of its enforcement requires that a distinction be made between "assignment" and "subrogation".

As stated in 6 C.J.S. Assignments § 1 a, p. 1045, "The word 'assignment' has a comprehensive meaning, and in its most general sense is a transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of an estate or right therein." [2] As ex-

---

2. See Bernardini v. Home & Auto. Ins. Co., 64 Ill.App.2d 465, 212 N.E.2d 499 (1965); Remsen v. Midway Liquors, Inc., 30 Ill.App.2d 132, 174 N.E.2d 7

pressed in Couch on Insurance 2d, Sec. 61:92, "(A)n assignment of a right or claim is the act of the parties to the assignment, dependent upon actual intention, and necessarily contemplating the continued existence of the debt or claim, the whole of which is assigned." Parenthetically, we observe that assignment of an entire interest or claim vests *legal* title in the assignee, together with the right to maintain an action in his own name as the real party in interest. Hayes v. Jenkins, Mo. App., 337 S.W.2d 259.

Subrogation originated as a creature of the common law. Basically, it is classified as either legal or conventional. Legal subrogation arises out of a condition or relationship by operation of law, whereas conventional subrogation arises by act or agreement of the parties. Cole v. Morris, Mo.Sup., 409 S.W.2d 668.[3] Subrogation is founded on principles of justice and its operation is governed by principles of equity. It rests on the principle that substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential and perfect justice between all parties without regard to form. 83 C.J.S. Subrogation § 2 a; Cole v. Morris, Mo.Sup., 409 S.W.2d 668. "As a general rule, any person who, pursuant to a legal obligation to do so, has paid even indirectly, for a loss or injury resulting from the wrong or default of another will be subrogated to the rights of the creditor or injured person against the wrongdoer or defaulter, persons who stand in the shoes of the wrongdoer, or others who, as the payor, are primarily responsible for the wrong or default." 83 C.J.S. Subrogation § 16. An important distinction between subrogation and assignment is that subrogation presupposes an actual payment and satisfaction of the debt or claim to which the party is

subrogated, although the remedy is kept alive in equity for the benefit of the one who made the payment under circumstances entitling him to contribution or indemnity, while assignment necessarily contemplates the continued existence of the debt or claim assigned. 6 C.J.S. Assignments § 2 b (12); Remsen v. Midway Liquors, Inc., 30 Ill.App.2d 132, 174 N.E.2d 7. As simply stated by the Supreme Court of South Carolina, "(S)ubrogation is the machinery by which the equity of one man is worked out through the legal rights of another". American Surety Co. v. Hamrick Mills, 194 S.C. 221, 9 S.E.2d 433.

As well illustrated in Steele v. Goosen, Mo.Sup., 329 S.W.2d 703 and Hayes v. Jenkins, Mo.App., 337 S.W.2d 259, two well reasoned and frequently cited cases, there is a controlling difference in Missouri between the assignment of a claim and subrogation to a claim. When there is an assignment of an entire claim there is a complete divestment of all rights from the assignor and a vesting of those same rights in the assignee. In the case of subrogation, however, only an equitable right passes to the subrogee and the legal title to the claim is never removed from the subrogor, but remains with him throughout. Also see the leading case of Pringle v. Atlantic Coast Line R. Co., 212 S.C. 303, 47 S.E.2d 722.

Section 379.203(4) provides in clear terms that the insurer is entitled to recover the monies it may have paid its insured in settlement *from the proceeds of any settlement or judgment* resulting from "the exercise of any rights or recovery of such person against any person or organization responsible for the bodily injury for which such payment is made * * *". (Unmistakably referring to the rights of recov-

(1961); Hayes v. Jenkins, 337 S.W.2d 259 (Spr.Mo.App.1960). See also Greene & Lloyd, Automobile Insurance—Assignment, Subrogation and the Real Party in Interest Statute in Missouri, 26 Mo. L.Rev. 62 (1961) Note 7; 16 Couch, Insurance 2d Sec. 61:92 (1966).

3. The terms "subrogation" and "equitable assignment" are sometimes, without regard to strictly technical accuracy, used synonymously. 6 C.J.S. Assignments § 2 b(12).

ery of an insured against any tort-feasor responsible for insured's bodily injury.) Tested under the legal standards we have noted immediately above, Section 379.-203(4) amounts to a clear legislative declaration that the right of subrogation arises in favor of the insurer under the conditions therein prescribed. Further—the enactment expressly provides that such right (of subrogation) is "subject to the terms and conditions of such coverage." The legislature has thus enacted as law what the parties had agreed to by formal contract, has confirmed the policy Trust Agreement, and thereby removed any doubt as to the binding effect of its contractual provision that an insurer, under the circumstances of this case, acquires a beneficial interest in the anticipated proceeds of the insured's unliquidated cause of action, whether realized by settlement or judgment, limited to an amount necessary to reimburse the insurer for payments made to its insureds in settlement.

The following described legal relationships have developed in this triangular controversy: State Farm has made part payment of sums plaintiffs claim they are legally entitled to recover as damages from Goodhue. Thereby State Farm has become subrogated to plaintiffs' right of recovery against Goodhue limited to the amount of its payments to plaintiffs. Plaintiffs have received partial indemnity for their loss and in consideration thereof have bound themselves *as trustees* to hold, in trust, for the benefit of State Farm, a sufficiency of any recovery from Goodhue, by settlement or judgment, necessary to reimburse State Farm for its payments. Subject to that obligation, plaintiffs hold legal title to their entire causes of action. They are further obligated to prosecute their causes diligently and to cooperate with State Farm in that endeavor.

At common law, in an action to enforce subrogation, the subrogee is neither a proper, nor a necessary party plaintiff, but he must sue in the name of the subrogor.

83 C.J.S. Subrogation § 67, p. 719. However, Section 507.010 V.A.M.S. 1969 provides: "Every action shall be prosecuted in the name of the real party in interest, but an executor, administrator, guardian, curator, trustee or an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name in such representative capacity without joining with him the party for whose benefit the action is brought; * * *." The statute (substantially in its present form) was construed in the early case of Cable v. St. Louis Marine Railway & Dock Co., 21 Mo. 133. The Supreme Court there held: "(T)he statute requiring the real party in interest to sue, should be construed in reference to the principle of the common law above stated, and must be limited to those cases in which the real party in interest possesses the entire cause of action. The original owner of a cause of action cannot, by parting with a portion of his interest in it, give a right of action to his assignee, neither by the common law nor by any thing contained in the present act regulating practice in the courts of justice." Those principles underlie the later decisions to the same effect in Steele v. Goosen, Mo.Sup., 329 S.W.2d 703 and Hayes v. Jenkins, Mo.App., 337 S.W.2d 259. In Hayes v. Jenkins, supra, the court relied upon and reaffirmed the Cable case in language quoted as follows: "The general rule is that a bare legal title to the action is sufficient to maintain an action at law. * * * Long ago it was held that the real party in interest statute (now Section 507.010) applies only where the entire or whole cause has been assigned. Cable v. St. Louis Marine Ry. & Dock Co., 21 Mo. 133, 136. Of course, if the cause itself has been assigned the claimant would no longer have any interest and could not maintain it. Steele v. Goosen, Mo., 329 S. W.2d 703, 711."

Relying upon the authorities noted and finding none espousing a contrary doctrine, we rule that State Farm is not the real

party in interest, within the intendment of Section 507.010, or any other rule of law, and that consequently the insurer is not entitled to prosecute the action it seeks to maintain against Goodhue. Only plaintiffs, the legal owners of their claims, are entitled to prosecute them. The trial court did not err in dismissing State Farm's amended cross-claim. In reaching this decision we have considered the authorities brought to our attention by State Farm, but we find nothing therein to warrant a different conclusion.

Counts I, II, III and IV of plaintiffs' petition asserting claims against Goodhue remain undetermined, subject to further judicial proceedings. State Farm is an intervenor therein by leave of court, as a matter or right under provisions of Civil Rule 52.11 V.A.M.R., and as held authorized by State ex rel. State Farm Mut. Auto. Ins. Co. v. Craig, Mo.App., 364 S.W. 2d 343. In our opinion the intervention was properly permitted for the reason State Farm has the requisite interest in the *subject matter* of plaintiffs' actions against Goodhue to intervene therein. In the Craig case the court defined the necessary "interest" the petitioner for intervention must have in the subject matter, as follows: "Such interest does not include a mere, consequential, remote or conjectural possibility of being in some manner affected by the result of the original action. It must be such a direct claim upon the subject matter of the action that the intervenor will either gain or lose by direct operation of the judgment to be rendered." It is apparent that State Farm will in fact gain or lose by direct operation of the judgments to be rendered, inasmuch as it is entitled, under the terms of its trust relationship with plaintiffs, and as a subrogee, to be reimbursed, *pro tanto,* from the proceeds of judgments that may be awarded to plaintiffs in this cause. If those facts were brought to the trial court's attention by an appropriate pleading on State Farm's behalf, praying that its right of subrogation be recognized and implemented, we believe that court has equitable power to enforce that right by an appropriate allocation of such judgments between plaintiffs in whose names they would be rendered, and State Farm to whom plaintiffs are bound, as fiduciaries, to faithfully account in accordance with their trust. The purpose of State Farm's intervention would be so limited. It should be understood State Farm has no right to participate in the trial of plaintiffs' actions.

Accordingly, the judgment dismissing appellant's amended cross-claim is affirmed.

All concur.