HARTFORD ACCIDENT &
INDEMNITY COMPANY,
Plaintiff-Respondent,

v.

WESTERN CASUALTY & SURETY
COMPANY, Defendant-Appellant.

No. 49689.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 30, 1986.

Craig A. Sullivan, Burns, Marshall &
Burns, Clayton, for defendant-appellant.

SATZ, Judge.

This is a dispute between two insurance companies, Hartford Accident & Indemnity Company (Hartford) and Western Casualty and Surety Company (Western), over which company has liability coverage for a particular personal injury claim. Hartford filed a declaratory judgment action against Western, requesting the trial court to declare that Hartford and Western shared pro rata coverage for the personal injury in question. The trial court did so. Western appeals. We reverse.

The case was tried on stipulated testimony and other agreed to facts. Prior to August 1978, Mar-Le Nursing Home was being run by Mr. Robert Rogers, the principal stockholder and president of R & B Ranch, Inc. (R & B). R & B built Mar-Le Nursing Home. Rogers obtained a general liability policy from Western for R & B Ranch, Inc. d/b/a Mar-Le Nursing Home. Among other things, the policy provided general liability coverage for the operation of the nursing home and was to be in effect from March 25, 1978 to March 25, 1979.

By a five year lease executed on September 1, 1978, but effective as of August 1, 1978, Rogers leased the Mar-Le Nursing Home to James C. Lincoln (Lincoln) and Larry G. Richardson (Richardson). Lincoln and Richardson in turn contracted with Health Facilities Management, Inc. (Health Facilities) to operate the nursing home effective August 1, 1978. The new operation continued to use the name Mar-Le Nursing Home.

Under the terms of the lease agreement between Lincoln and Richardson and R & B, Lincoln and Richardson were responsible for all operational costs, maintenance and upkeep of the improvements on the leased premises and were to procure fire, extended coverage and public liability insurance. Rogers was to be included as an additional insured under the liability provisions and as a loss payee under the casualty provisions. Lincoln acquired a general liability insurance policy from Hartford effective August 9, 1978 at 12:01 a.m. According to an underwriter at Hartford, Lincoln's agent stated the named insured was to read "Mar-Le Nursing Home, Inc. c/o Health Facilities Management, Inc." Although Mar-Le Nursing Home was never a corporation, the name of the insured on Hartford's policy was "Mar-Le Nursing Home, Inc. c/o Health Facilities Management Inc." Rogers was listed as an additional insured.

On August 9, 1978, an ambulance attendant slipped and fell on the nursing home's premises while delivering a patient. The attendant sued "Health Facilities Management, Inc. and Lincoln-Richardson Enterprises, Inc., d/b/a Mar-Le Nursing Home." The record does not show why Lincoln-Richardson Enterprises, Inc. was named as the owner of the business operating Mar-Le Nursing Home. Hartford provided the defense for these defendants and requested Western to participate in the defense and any settlement. Western declined to do so on the grounds its policy did not cover any of the named defendants. Hartford settled that case for $30,000.

Hartford then sought the declaratory judgment here, requesting a declaration that Western's policy of liability insurance was applicable to the ambulance attendant's claim and that Western was liable for its pro rata share of the settlement and legal expenses. The trial court found the policies of both Western and Hartford were in effect on the date of the attendant's accident and also found each policy "insur[ed] the premises of the Mar-Le Nursing Home." Without explicit reasons, the court then concluded Western owed a pro rata share of the settlement and legal expenses.

On appeal, Western argues its liability policy issued to R & B did not cover any of the defendants named in the underlying tort action. Consequently, even if Western's policy covered the accident, Western contends, it still would not owe Hartford a pro rata share of the settlement and legal expenses. We agree.[1]

Under our Declaratory Judgment Act, "[a]ny person interested under ... a written contract" or any person "whose rights, status or other legal relations are affected by a ... contract" has the right to have determined any question of construction "arising under the ... contract." Section 527.020, RSMo 1978. The outer dimensions of the terms—"interest" in a contract and "rights, status [and] other legal relations" affected by a contract—remain unclear. However, "it may safely be said that the term 'rights and other legal relations' was intended to include the Hohfeldian jural relations of rights, privileges, powers and immunities, and their correlative duties, no-rights, liabilities and disabilities." Borchard, *Declaratory Judgments and Insurance Litigation*, 34 Ill.L.Rev. 245, 250 (1939). The right Hartford seeks to have declared here is a right to contribution from Western.

---

1. Plaintiff's motion to strike defendant's reply brief taken with the cause is denied. *See Morris*

*v. Reed*, 510 S.W.2d 234, 238 (Mo.App.1974).

Hartford's insurance contract was with "Mar-Le Nursing Home, Inc. c/o Health Facilities Management Inc." Western's insurance contract was with R & B. Thus, facially, there is no privity of contract between Hartford and Western, nor is Hartford a third party beneficiary under Western's policy. Both Hartford and the trial court tacitly acknowledge this lack of legal relationship and base Western's liability to Hartford on what they conceive to be Hartford's legal or equitable right to pro rata contribution from Western. This right is created, Hartford contends, from the fact Hartford and Western both had liability policies in effect on the premises of the Mar-Le Nursing Home at the time the personal injury occurred. In short, Hartford bases its right to contribution against Western on what it conceives to be Western's concurrent coverage. We disagree.

■ From the trial court's findings, Hartford's policy and Western's policy were in effect on the nursing home's premises on the date of the injury. Moreover, each policy did have a pro-rata clause based upon "other insurance."[2] But in order for Hartford to have a right of contribution against Western on the ground of concurrent insurance, the insurance provided by each—the "other insurance"—must cover the same insured, the same interest and the same risk. *See Phillips Hotel Operating Co. v. Liberty Mutual Ins. Co.*, 366 S.W.2d 54, 57 (Mo.App.1963). *See also* 16 G. Couch, R. Anderson, M. Rhodes, *Couch on Insurance 2d* §§ 62:93–:97, 62:162 (rev. ed. 1983) and cases cited therein.

■ The risk at issue here was the attendant's claim of negligence against "Lincoln-Richardson Enterprises, Inc. and Health Facilities Management, Inc." because their "employee allow[ed] a garden hose to run and spread water" on the premises, *creating a slippery and unsafe condi-*

tion. While both policies covered the nursing home premises, Western insured only the legal liability of R & B and not the liability of Lincoln-Richardson Enterprises, Inc. or Health Facilities. On the present record, only Hartford covered Lincoln-Richardson Enterprises, Inc. and Health Facilities, the only parties in the underlying personal injury action, as well as the only parties against whom the ambulance attendant asserted a claim. Thus, Hartford and Western were not concurrent insurers because they did not both cover the tortfeasors in the underlying action, i.e. they did not cover the "same insured."

Admittedly, there was a mutually insured party under the respective policies: Rogers. Rogers, as an officer of R & B, was insured by Western under an omnibus clause extending coverage to the officers, directors and stock-holders of R & B. He was also insured by Hartford as an additional insured to "Mar-Le Nursing Home, Inc. c/o Health Facilities Management Inc." But, as already noted, Rogers was not a party to the underlying personal injury action.

Furthermore, it is questionable, at best, whether the policies of Hartford and Western covered the same interest and the same risk. Hartford argues Western's insured, R & B, was the landlord of the premises at the time of the personal injury, and, although the court made no finding as to the insurable interest of Hartford's insured, its most plausible interest would be as tenant. Even Hartford's policy refers to the premises in question as "leased to the named insured." The duties of a landlord and its tenant to third parties, however, are not the same, *see, e.g., Barb v. Farmers Insurance Exchange*, 281 S.W.2d 297, 304 (Mo. 1955); *Milne v. Pevely Dairy Co.*, 641 S.W.2d 158, 160 (Mo.App.1982), and, therefore, the interests and risks protected by

**2.** Generally, a pro rata clause provides the insurer will pay its pro rata share of the loss, usually in proportion which the limits of its policy bears to the aggregate limits of all valid and collectible insurance. *State Farm Mutual Automobile Ins. Co. v. Universal Underwriters*

*Ins. Co.*, 594 S.W.2d 950, 953 (Mo.App.1980). *See also* 16 G. Couch, R. Anderson & M. Rhodes, *Couch on Insurance 2d* § 62.2 (rev. ed. 1983).

See appendix for the identical "other insurance" clause in each policy here.

the respective policies would not be the same.

■ Understandably, Hartford does not argue that by settling the personal injury action it became subrogated to rights Lincoln-Richardson Enterprises, Inc. and Health Facilities had against Western. "Subrogation is the right of the insurer to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer."[3] 16 Couch, *supra*, § 61:2, at 75. *See also Kroeker v. State Farm Mutual Automobile Ins. Co.*, 466 S.W.2d 105, 110 (Mo.App.1971). Since Lincoln-Richardson Enterprises, Inc. and Health Facilities were not covered by Western's policy, they do not have any rights under that policy with respect to the underlying personal injury claim to which Hartford could be subrogated. And certainly, Hartford could not claim to be the subrogee of R & B, because, as already noted, R & B was not a party to the underlying personal injury action and, thus, had no legal obligations that Hartford could have discharged.

■ Nor can Hartford rest its claim on a right to indemnification. In theory, in the underlying tort action Hartford's insured, as tenant, could have impleaded, R & B as landlord, alleging R & B to be totally or partially liable for the attendant's injury because of R & B's alleged right to control the premises in question. *See* Rule 52.11. For our purposes here, we shall assume this right of impleader was not extinguished by Hartford's settlement and we also shall assume, on the present record, this right can be established through a declaratory judgment action. Even with these assumptions, Hartford would still not prevail.

Consistent with its pleaded theory and prayer for relief, Hartford admits its insured is partially liable for the injury in question, and, therefore, Hartford is willing to pay a pro rata share of the damages incurred. This theory of partial liability is totally different and at war with an impleader alleging R & B, Western's insured, to be totally responsible. Admittedly, Hartford's position would be consistent with an impleader based upon R & B's partial liability for the underlying tort.[4] However, R & B's partial liability must be based upon R & B being a joint or concurrent tortfeasor with Hartford's insured, *see, e.g., Kendall v. Sears, Roebuck and Co.*, 634 S.W.2d 176, 179 (Mo. banc 1982); *Missouri Pacific R. Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466, 468 (Mo. banc 1978), and nowhere in the record is there an express finding or argument that Hartford bases its claim against Western on the ground Hartford's insured and Western's insured were either joint or concurrent tortfeasors.

Judgment reversed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.

### APPENDIX

#### Pro Rata Clause

Other Insurance. The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insur-

---

**3.** Subrogation is founded on principles of justice and is governed by principles of equity. *Kroeker*, 466 S.W.2d at 110. It compels the ultimate discharge of a debt by the one who in good conscience and fairness should pay it. *State ex rel. McCubbin v. McMillian*, 349 S.W.2d 453, 459 (Mo.App.1961).

**4.** "Although contribution and indemnity or partial indemnity have been used interchangeably, the terms contribution and indemnity represent different concepts. 'There is an important distinction between contribution, which distributes the loss among the tortfeasors by requiring each to pay his proportionate share, and indemnity, which shifts the entire loss from one tortfeasor who has been compelled to pay it to the shoulders of another who should bear it instead.' W. Prosser, Law of Torts, § 51 at 310 (4th ed. 1971); Contribution-Negligent Tortfeasors, 60 A.L.R.2d 1366–69. The term contribution is preferable when referring to apportionment of loss or damages between joint or concurrent tortfeasors." *Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d 727, 729 n. 3 (Mo. banc 1982).

ance. When this insurance is primary and the *insured* has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

    (a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

    (b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.