# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3769

_____

Cretcher-Lynch & Company;                    *
Steve Hatcher,                               *
                                             *
          Plaintiffs-Appellants,             *
                                             *    Appeal from the United States
     v.                                      *    District Court for the Western
                                             *    District of Missouri.
National Council on Compensation             *
Insurance, Inc.,                             *              [PUBLISHED]
                                             *
          Defendant-Appellee.                *

_____

Submitted:  April 13, 1998
Filed:  July 10, 1998

_____

Before RICHARD S. ARNOLD, Chief Judge,[1] LAY and LOKEN, Circuit Judges.

_____

PER CURIAM.

Cretcher-Lynch & Co. ("CLC") and Steve Hatcher ("Hatcher") filed this suit against the National Council on Compensation Insurance, Inc. ("NCCI"), alleging NCCI failed to properly bind workers compensation insurance for Hatcher's sole proprietorship, Prestige Homes and Additions, Paramount State of the Art Roofing

_____

[1]The Hon. Richard S. Arnold stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998.  He has been succeeded by the Hon. Pasco M. Bowman II.

("Prestige/Paramount"). The district court granted summary judgment in favor of NCCI. Hatcher and CLC now appeal. We affirm, but for reasons different than those stated by the district court.

## Factual and Procedural Background

NCCI administers the Missouri Workers Compensation Insurance Plan ("Plan"). Using an assigned risk method,[2] the Plan provides workers compensation insurance to Missouri employers who cannot obtain such coverage on the voluntary market. Hatcher could not obtain workers compensation coverage for Prestige/Paramount on the voluntary market, so he applied for coverage under the Plan. CLC is an insurance brokerage that assisted Hatcher in the application process.

On July 15, 1992, CLC submitted Hatcher's application for coverage to NCCI. The application named Prestige/Paramount as the entity seeking coverage, and it indicated Prestige/Paramount was a sole proprietorship. Hatcher's brother, Dan Hatcher, signed the application as the representative of Hatcher, and he also signed an accompanying third-party finance agreement. Dan Hatcher owned Hatcher Construction, Inc., which had ceased operations sometime before the formation of Prestige/Paramount. Dan Hatcher previously had obtained workers compensation insurance through the Plan, and apparently he owed outstanding premium to one of the Plan's servicing carriers. The Plan's procedures provide that an employer with an outstanding obligation for workers compensation insurance is not entitled to Plan insurance. See J.A. at 209, 231.

---

[2]Under this assigned risk method, NCCI processes an employer's application, binds coverage, selects a servicing carrier, and forwards the employer's application and premium deposit to that servicing carrier. See J.A. at 208. This servicing carrier then issues a policy under its company name and provides the same insurance services to the Plan policyholder as it provides to its other policyholders. See id.

After reviewing the application and its records regarding Dan Hatcher and Hatcher Construction, Inc., NCCI determined it needed more information regarding the ownership of Prestige/Paramount. NCCI returned Hatcher's application to CLC along with a letter dated July 30, 1992. The letter stated, in relevant part:

> This application is being returned to you for the reason(s) listed below. If a deposit premium was submitted with the application, the original binding date may be honored provided the application, with complete information, is postmarked within fifteen (15) calendar days following the date of this letter and the risk is otherwise deemed eligible for coverage. The original binding date will be void unless all items requested below are provided.
>
> OUR RECORDS INDICATE A CHANGE HAS OCCURRED IN OWNERSHIP, NAME, LEGAL STATUS, MERGER OR ADDITIONAL NAMED INSURED. IN ORDER TO DETERMINE ELIGIBILITY FOR COVERAGE, THE ENCLOSED ERM-14 FORM MUST BE COMPLETED IN FULL AND SIGNED.
> SIS [sic] THIS RISK OPERATE UNDER A DIFFERENT NAME AT ONE TIME.

J.A. at 244 (emphasis added).

Gayle Brunner, a CLC employee, received the letter on August 3, 1992 and observed the letter requested the ERM-14 form be returned within fifteen days of July 30, 1992. CLC did not return the form to NCCI within fifteen days, because the letter and form "got caught in the shuffle of paper on [Gayle Brunner's] desk." See J.A. at 312 (reprinting parties' Joint Stipulation of Facts). CLC did not forward the form to Hatcher until August 19, 1992, and CLC did not inform Hatcher of the fifteen-day deadline.

On August 27, 1992, one of Hatcher's employees was injured on the job and sometime thereafter, filed a workers compensation claim. On August 31, 1992, CLC received the completed ERM-14 form and forwarded the form and Hatcher's other application materials to NCCI. NCCI bound coverage effective September 5, 1992 and asserts Hatcher's employee's workers compensation claim that arose in the interim was not insured by the Plan. Hatcher asserted a claim against CLC for indemnity against any loss resulting from the uninsured workers compensation claim. In turn, CLC demanded indemnity from NCCI, which NCCI refused to provide. CLC's professional liability insurer eventually settled the workers compensation claim on behalf of Hatcher.

On August 23, 1996, Hatcher and CLC filed suit in state court, alleging NCCI breached its duty to bind coverage upon its receipt of Hatcher's initial application materials. The complaint asserted NCCI was directly liable to Hatcher and secondarily liable to CLC as Hatcher's equitable subrogee. See J.A. at 11-17. On September 30, 1996, NCCI removed the action to federal district court. On July 31, 1997, NCCI moved for summary judgment, contending Hatcher could not make out a prima facie case as to NCCI's liability, and CLC was not entitled to equitable subrogation. On September 18, 1997, the district court[3] granted NCCI's motion for summary judgment, finding there was no contract between NCCI and Hatcher, and NCCI did not breach any duty it owed to Hatcher. Cretcher-Lynch & Co. v. National Council on Compens. Ins., Inc., No. 96-1016-CV-W-4, slip op. at 8-9 (W.D. Mo. Sept. 15, 1997). Moreover, the court rejected CLC's equitable subrogation claim, concluding CLC's equitable subrogation rights depended upon Hatcher having rights against NCCI, and Hatcher had no rights against NCCI in either contract or tort. Id. at 9.

---

[3]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

Real Party In Interest

The first issue we address is whether CLC and Hatcher are proper parties to this action. At oral argument, NCCI alleged that Hatcher has no claim against NCCI because he suffered no damages. NCCI further alleged that CLC has no independent legal rights against NCCI. On the other hand, CLC asserts it has a legitimate claim against NCCI under the doctrine of equitable subrogation.

Even if we assume CLC has a valid claim of equitable subrogation by reason of paying Hatcher's injured employee workers compensation benefits, see American Nursing Resources, Inc. v. Forrest T. Jones & Co., 812 S.W.2d 790, 794 (Mo. Ct. App. 1991) (defining subrogation), under Missouri law, CLC is nonetheless not the real party in interest to bring the claim against NCCI. The law of Missouri has long held that in a claim for equitable subrogation, in the absence of an assignment, the subrogee owns only an equitable interest in the claim. See Kroeker v. State Farm Mut. Auto. Ins. Co., 466 S.W.2d 105, 110 (Mo. Ct. App. 1971). Thus, in the present case, it is Hatcher who holds legal title to any claims against NCCI. See id. Even though Hatcher has been paid, as trustee, he was obligated to prosecute these claims and to cooperate with CLC in that regard. See id.

Accordingly, CLC's claim is dismissed without prejudice on the basis that it is not the real party in interest. However, we also conclude that the NCCI is incorrect in stating Hatcher has no claim against it because CLC's payment of the workers compensation claim means Hatcher has not been damaged. See Waterwiese v. KBA Constr. Managers, Inc., 820 S.W.2d 579, 584-85 (Mo. Ct. App. 1991). CLC's payment on behalf of Hatcher did not extinguish Hatcher's legal title to his claims against NCCI. Thus, Hatcher remains a proper party to this action.

Hatcher's Complaint

Hatcher's claim as set forth in his original petition neither mentions breach of contract nor explicitly alleges that NCCI was negligent. Instead, Hatcher's claim is based on the theory that NCCI has breached its duty to bind coverage of his workers compensation insurance upon receipt of his application, which he alleges was forwarded to NCCI in good faith.

In its order granting summary judgment in favor of NCCI, the district court characterized Hatcher's claim as a "contract and/or tort claim against NCCI." Cretcher-Lynch & Co., No. 96-1016-CV-W-4, slip op. at 6. The court rejected Hatcher's contract claim upon the basis that there was no mutuality of agreement between NCCI and Hatcher. Id. at 6-8. The court also rejected Hatcher's negligence claim, finding NCCI "has a duty to 'promptly review all applications as received[,] [t]o issue binders promptly to all employers who appear to be qualified for coverage under the Plan'" and "that in promptly reviewing Hatcher's application for coverage, alerting him to what was necessary to be qualified for coverage, and in making him aware of the deadline by which the information must be received in order that he be promptly bound, NCCI did not breach its duty." Id. at 8-9.

On appeal, Hatcher asserts he "do[es] not predicate NCCI's liability upon a contract theory." Hatcher Reply Br. at 12. Instead, Hatcher asserts that there was an immediate duty of NCCI to automatically bind coverage for all applicants who applied in good faith. He asserts that he made his application in good faith and that NCCI now concedes the original application contained all of the material information necessary to bind the application. In effect, Hatcher urges that notwithstanding NCCI's request for additional information, under the terms of the Plan and the Plan's Information and Procedures Handbook ("Handbook"), coverage was bound upon receipt of the application as there was no showing that the application was not submitted in good faith. Hatcher asserts that under these circumstances, NCCI's unilateral request for

additional information did not affect the original date of binder placed on the application.[4]

Breach of Contract

Hatcher does not argue that he has filed a breach of contract claim; nonetheless, under the facts stipulated we view his complaint and argument as one for breach of contract. However, we need not resolve any contract issues on appeal, because Hatcher has abandoned any breach of contract claim by asserting he does not "predicate NCCI's liability upon a contract theory" and, therefore, did not respond to NCCI's argument on this point. It is not our duty to question such abandonment. Abandonment may be made for various reasons, but it is fundamental, at least in this court, that if a party, by and through counsel, has abandoned a claim, this court will not review the same. See Jasperson v. Purolator Courier Corp., 765 F.2d 736, 740 (8th Cir. 1985); Fed. R. App. P. 28(a).

Negligence

Thus, Hatcher's claim on appeal, as he has asserted it, is that NCCI was essentially negligent in failing to bind the coverage upon receipt of his application. The argument is made that under the terms and conditions of the Plan and Handbook, NCCI had a duty to provide coverage and failed to comply with that duty. Assuming that NCCI had such a duty, it is clear to us that this duty rested solely upon the claim that the parties consensually contracted for coverage through Hatcher's application and

---

[4]The evidence demonstrates that NCCI marked the application in the right-hand corner with the abbreviation "Bd 7 16 92," indicating that was the effective date of the coverage. See J.A. at 47. Hatcher's employee who was injured on the job incurred his injury on August 27, 1992. At that time, the ERM-14 form had not been returned to CLC or NCCI.

tender of the premium, the alleged acceptance by NCCI by binding the coverage pursuant to the Plan and Handbook, and the retention of the deposit premium. Under Missouri law, the mere non-performance of a contract does not provide a basis for tort liability. See Preferred Physicians Mut. Management Group v. Preferred Physicians Mut. Risk Retention, 918 S.W.2d 805, 814 (Mo. Ct. App. 1996) (citing Khulusi v. Southwestern Bell Yellow Pages, 916 S.W.2d 227, 2[30] (Mo. Ct. App. 1995)). Hatcher's claim is simply one of non-performance of a promise. It is clear that there was no duty apart from the alleged contract to perform, and under the circumstances, Hatcher's claim for negligence must be dismissed.

Although it is for different reasons than those set forth by the district court, we affirm the judgment of dismissal.

JUDGMENT AFFIRMED.

A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.