Stella JONES, Respondent,

v.

The AETNA CASUALTY & SURETY
COMPANY, Appellant.

No. 25823.

Missouri Court of Appeals,
Kansas City District.

July 23, 1973.

--◆--

John R. Gibson and John W. Cowden, Kansas City, for appellant; Morrison, Hecker, Cozad, Morrison & Curtis, Kansas City, of counsel.

George T. O'Laughlin and William E. Simmons, Kansas City, for respondent. Miller & O'Laughlin, Kansas City, of counsel.

Before DIXON, C. J., and SHANGLER, PRITCHARD, SWOFFORD, WASSER-STROM and SOMERVILLE, JJ.

PRITCHARD, Judge.

The principal issue on this appeal is whether respondent may settle with a tort feasor for a claim for personal injuries and reserve a claim for medical expense reimbursement against appellant Aetna in the face of a "Reimbursement and Trust Agreement" clause in the policy of automobile insurance. The trial court granted judgment for respondent for her medical expenses, $2,842.45, plus interest at 6% per annum from November 20, 1968, and $284.-25 damages for vexatious refusal to pay her medical expenses, together with $900.-00 attorney fees.

On June 24, 1968, Aetna issued its "Automobile Policy (Auto-Rite)" to respondent's son, Kenneth K. Jones, by which it agreed to pay all reasonable medical expense incurred by the named insured or a relative while occupying a non-owned automobile. When injured in a collision, respondent was occupying a non-owned automobile owned and driven by Rosalie Edgeman on September 22, 1968.

Thereafter, respondent made a timely claim against Aetna for payment of her medical expenses. Aetna then presented to respondent an "Auto-Rite Medical Expense Statement and Agreement" which respondent refused to sign. The pertinent portions of the proffered agreement are these:

"To the extent that The Aetna Casualty and Surety Company, in accordance with the terms of the Medical Expense Coverage provided by the Auto-Rite Policy issued to the above named policyholder, has made or shall hereafter make payment to or for the benefit of the Undersigned on account of medical expense incurred by the Undersigned because of bodily injury to the above named person as the result of the above described accident, the Undersigned

\*  \*  \*  \*  \*  \*

(c)   agrees to reimburse Aetna Casualty & Surety Company to the extent of such payment immediately upon collection of damages whether by action at law, settlement or otherwise and the undersigned hereby authorizes and directs his attorney to reimburse Aetna Casualty the amount of any such payment which may be made from any amount due the undersigned as his share of any recovery for his bodily injury in the event of a settlement or recovery against any person or organization legally responsible for the bodily injury because of which such payment is or shall be made;

(d)   affirms the right of Aetna Casualty and Surety Company in accordance with all of the terms of the Reimbursement and Trust Agreement of the policy

to have lien to the extent of such payment notice of which may be given to the person or organization causing such bodily injury, his agent, his insurer or a court having jurisdiction on the matter."

Auto-Rite SP-25 endorsement, "Amendment of Medical Expense Coverage", attached to the policy, provides:

"It is agreed that the following Condition is substituted for the second paragraph of the Subrogation Condition—REIMBURSEMENT AND TRUST AGREEMENT. In the event of payment to any person under the Medical Expense Coverage:

(a) the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; and the Company shall have a lien to the extent of such payment, notice of which may be given to the person or organization causing such bodily injury, his agent, his insurer or a court having jurisdiction in the matter;

(b) such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such bodily injury;

(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

(d) such person shall execute and deliver to the Company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision."

The Reimbursement and Trust Agreement, above, is the substitute for the second paragraph of the Subrogation Paragraph 14 of the policy which is: "In the

event of any payment under the Medical Expense Coverage of this policy, Aetna Casualty shall be subrogated to all the rights of recovery therefor which the injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights."

■ On November 4, 1968, respondent filed her petition for damages for personal injuries in the Platte County Circuit Court against the tort feasor, Rosalie Mae Edgeman. Respondent alleged that she received multiple injuries as a result of Rosalie's negligence, and that she had been confined to hospitals and had been under the care of physicians. The prayer for damages was for $25,000.00. On May 15, 1969, respondent signed a release to Rosalie in consideration of $11,750.00. The release provided:

"It is agreed notwithstanding any language to the contrary herein that medical expenses are not included in nor paid by such payment. The undersigned is seeking payment of such expenses under a policy of the Aetna Casualty and Surety Company and agrees to look solely to that source for payment of such expenses."

Kroeker v. State Farm Mutual Automobile Ins. Co., 466 S.W.2d 105 (Mo.App. 1971), is relied upon by Aetna to give validity to its Reimbursement and Trust Agreement as not amounting to an assignment of a cause of action for personal injuries. The court there extensively reviewed the traditional differences between legal meanings and legal effect of the terms "assignment" and "subrogation." It is argued that the Reimbursement and Trust Agreement in Kroeker very similar in language to the one here, was in effect held to be effective to secure the *subrogation* right, and that the language here in the policy should not be construed to be an

assignment or transfer of title of a cause of action, where in Kroeker it did not do so. This argument overlooks the important fact that the distinction made in Kroeker between assignment and subrogation was not because one was permissable and the other not, but rather because an assignment would have given the insurer a direct cause of action in its own name, while subrogation does not. That ruling in no way disturbed the established Missouri rule that an insurer may not acquire part of the insured's rights against a tort feasor (other than an uninsured motorist) by reason of payment of medical expense, *either by assignment or by subrogation.*

It was held in Travelers Indemnity Company v. Chumbley, 394 S.W.2d 418, 424 (Mo.App.1965), "Since our Missouri courts consistently have followed the common law rule prohibiting the assignment of a cause of action for personal injury (see cases cited marginally in note 12), we come to the same conclusion as that reached in Peller, supra." [Peller v. Liberty Mutual Fire Ins. Co., 220 Cal.App.2d 610, 34 Cal. Rptr. 41, 1963]. Both the Chumbley and Peller cases involved the validity of *subrogation* clauses in favor of insurers upon payment of medical expense coverage in automobile policies in the form, supra, that Aetna formerly had as a part of its policy. Other cases following Chumbley likewise holding that clauses for reimbursement for medical expense payments are invalid because they amount to an assignment of a cause of action for personal injuries which is nonassignable and because they are against public policy, are: Forsthove v. Hardware Dealers Mutual Fire Ins. Co., 416 S.W.2d 208 (Mo.App.1967) (reimbursement asserted under the equitable theory of restitution); and Chuning v. Calvert, 452 S.W.2d 580 (Mo.App.1970) (reimbursement sought on the theory that an ordinance had created a right of subrogation or indemnity).

In paragraph (a) of the Trust Agreement it is provided that the Company shall be entitled to the extent of (medical expense) payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made. Paragraph (b) provides "such person shall hold in trust for the benefit of the Company *all rights of recovery* which he shall have against such other person or organization because of such bodily injury." (Italics added.) In addition to the foregoing italicized words, it is most significant that the Trust Agreement goes on: " * * * [A]nd the Company shall have a lien to the extent of such payment, notice of which may be given to the person or organization causing such bodily injury, his agent, his insurer or a court having jurisdiction in the matter; * * * (c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights; (d) such person shall execute and deliver to the Company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision."

Under paragraph (b), the insured (respondent) agrees to hold in trust for the benefit of the company *all rights of recovery* (against the tort feasor). What is attempted to be transferred "in trust" is the insured's right of action for a portion of his claim for personal injuries—a right of recovery. This is in itself a violation of the rule in Chumbley, and cases cited and following it. Secondly, the Trust Agreement provides that the Company shall have a lien to the extent of its payment, "notice of which shall be given to the person or organization causing such bodily injury, his agent, his insurer or a court having jurisdiction in the matter." Under the wording of this clause, what else could be contemplated than that the insurer should have a right of action to enforce a lien on a claim which formerly belonged to the insured? Paragraph (d) of the Trust Agreement further requires the insured to

back up his transfer in trust of his partial cause of action by the execution and delivery of such instruments and papers to secure the rights of the company.

■ In Kroeker, supra, loc. cit. 466 S. W.2d 110, it was said, "An important distinction between subrogation and assignment is that subrogation presupposes an actual payment and satisfaction of the debt or claim to which the party is subrogated, although the remedy is kept alive *in equity* for the benefit of the one who made the payment under circumstances entitling him to contribution or indemnity, while assignment necessarily contemplates the continued existence of the debt." (Italics added.) If otherwise valid, the Reimbursement and Trust Agreement in this case could only give rise to a right *in equity* to enforce it, similar to the subrogation right. But attempted reservation of subrogation rights under medical expense payment clauses were in Chumbley and other cases, supra, held to amount to assignments of causes of action for personal injuries, which are nonassignable as being against public policy. Kroeker, of course, may be distinguished on the basis that the uninsured motorist statute, § 379.203(4), RSMo 1969, V.A.M.S., "provides in clear terms that the insurer is entitled to recover the monies it may have paid its insured in settlement *from the proceeds of any settlement or judgment* resulting from 'the exercise of any rights or recovery of such person against any person or organization responsible for the bodily injury for which such payment is made * * * '." (466 S. W.2d 110[6].) There is no statute authorizing Aetna to preserve its right in equity to recover under its trust theory amounts paid to or on behalf of respondent for her medical expenses. The trust theory is similar to a subrogation right, which under the law of this state, absent a statute, is invalid as amounting to an assignment of a claim for personal injuries. The Reimbursement and Trust Agreement provision of the policy is thus not a bar to respon-

dent's recovery for her medical expenses under the insuring agreement of the policy.

■ It follows that since the "Reimbursement and Trust Agreement" is invalid as a partial assignment of respondent's cause of action for personal injuries, she was not required to sign the proferred "Auto-Rite Medical Expense Statement and Agreement" which substantially follows the policy provision. The refusal to sign the proferred document thus did not constitute a material breach of the terms of the policy as contended by Aetna in its Point II.

■ Both parties contend that the other split their causes of action. As to Aetna, respondent claims that the policy and "trust agreement" attempted to sever her claim for medical expenses and assign the right to recover therefor to Atena. It is unnecessary to pursue respondent's claim further because of the above holding that the purported "trust agreement" amounts to a partial assignment of a claim for personal injuries which is not permitted in this state. Aetna's contention that respondent split her claim for damages into two causes of action, one for her injuries and one for her medical expenses, is answered by the general rule stated in 1 C.J.S. Actions § 102, p. 1312, "The rule against splitting a cause of action applies only where the several actions are between the same parties." See also Lee v. Guettler, Mo., 391 S.W.2d 311, 313[4–6] (1965), quoting C.J.S., and "Restatement of Judgments, Comment b, Sec. 62, saying that the rule it states against splitting 'presupposes a claim and judgment of a single plaintiff against a single defendant.' " Here respondent's original claim was not only against a person different than Aetna, but also it was in tort as distinguished from the present contract claim asserted against Aetna.

Aetna says that respondent may not recover her medical expenses because she received payments thereon from the Medi-

care Insurance Plan, and Exclusion (n) of the policy precludes her right of recovery. That exclusion is: "This policy does not apply: * * * Under the Medical Expense Coverage, (n) to that amount of any medical expense which is paid or payable to or on behalf of the injured person under the provisions of any * * * (2) individual, blanket or group accident, disability or hospitalization insurance, (3) medical, surgical, hospital or funeral service, benefit or reimbursement plan * * *." It is stipulated: "9. That payments have been made on behalf of plaintiff for a portion of the cost of her medical care under the Medicare insurance plan." No amount is specified.

Apparently, and according to the article, 28 Insurance Counsel Journal 276, clauses such as those of exclusion (n) had their inception into insurance contracts after 1959 at the ingenious instance of the National Bureau of Casualty Underwriters and the Mutual Casualty Insurance Rating Bureau. At page 279 of that article, it was said, "Both the Special and Package automobile policies exclude the amount of 'any medical expense paid or payable to or on behalf of the injured person under the provisions of any (1) automobile or premises insurance affording benefits for medical expenses, (2) individual, blanket or group accident, disability or group accident, disability or hospitalization insurance, (3) medical or surgical reimbursement plan or (4) workmen's compensation or disability benefits law or any similar law.'" (Note that the foregoing quote is practically the same as exclusion (n) in the instant case.) The article goes on to say that the application of the exclusion should bring about a different result in situations such as that presented in Kopp v. Home Mut. Ins. Co., 6 Wis.2d 53, 94 N.W.2d 224, where the court allowed recovery under medical payments coverage where the claimant had Blue Cross benefits which already paid his hospital bill. Kopp had no provision such as exclusion (n), nor did the cases following its precedent, e.g. Masaki v. Columbia

Casualty Company, 48 Haw. 136, 395 P.2d 927 (1964); Smith v. United Services Automobile Assn., 52 Wis.2d 672, 190 N. W.2d 873 (1971); Feit v. St. Paul Fire & Marine Insurance Co., 209 Cal.App.2d Supp. 825, 27 Cal.Rptr. 870 (1962); State Farm Mutual Automobile Ins. Co. v. Fuller, 232 Ark. 329, 336 S.W.2d 60 (1960), and the like.

Respondent's position as to the applicability of Exclusion (n) is that her right to recover for all of her medical expenses is not diminished thereby to the extent of benefits under the government Medicare program because Medicare is a social welfare program and not " 'individual, blanket or group accident, disability or hospitalization insurance' or a 'medical, surgical, hospital or funeral service, benefit or reimbursement plan.' " Since this case was originally submitted, and after rehearing was granted on an original opinion, the case of Imvris v. Michigan Millers Mutual Insurance Company, 39 Mich.App. 406, 198 N.W.2d 36 (1972), has been handed down. That case had the same issue now presented, " 'The basic issue is whether medical expenses paid by the Social Security Administration under Medicare falls within the medical expenses coverage exclusions contained in the policy, and this, of course, must be determined by whether medical care payments are "accident, disability or hospitalization insurance" or "medical, surgical, hospital or funeral service benefits or reimbursement" within the ordinary meaning of these terms as they are contained in the policy in question.' " The court affirmed the memorandum observations of the trial court, which relied upon Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), which held "that the social security system may be accurately described as a form of social insurance enacted pursuant to Congress' power to spend money in the aid of the general welfare." (198 N.W.2d 38[2].) On the same page the court approved further what the trial court had said, " 'Clearly the language of the contract providing

for exclusions for accident disability and hospitalization insurance did not contemplate Medicare payments. Medicare is social welfare legislation passed by the Congress to aid the general health and welfare of those over 65 years of age. Although classified as social insurance, it is clearly not an insurance program within the ordinary meaning of the term insurance and within the meaning of the exclusions contained within the policy in question." The Imvris court went on to say there was clearly an ambiguity in the policy (as to whether Medicare payments are insurance) and resolved the ambiguity against the insurer. Buttressing the basic concept of the Imvris court that Medicare provisions are social insurance as distinguished from contractual insurance are certain Congressional enunciations of the purpose of Medicare, first enacted in 1965. 42 U.S.C.A. § 1395b provides that there shall be no prohibition of a state providing, or any individual from purchasing or otherwise securing protection against the cost of any health service. Medicare is expressly made inapplicable to 42 U.S.C.A. §§ 2651–2653, which permits the United States to recover from a tort feasor for medical expenses which it was obliged to provide the injured party, leading to the conclusion that if the government considered itself to be an insurer, it would have retained the right afforded by the statute rather than having excluded Medicare. See Carey v. Finch, 316 F. Supp. 1263 (D.C.La.1970), although holding that an 81-year old woman did not qualify for emergency services in a non-participating hospital under the facts, noted, 316 F.Supp. 1267[3, 4], "As remedial social welfare legislation, 'the Social Security Act is to be construed liberally to effectuate its general purpose of easing the insecurity of life.' " See also Sowell v. Richardson, 319 F.Supp. 689 (D.C.S.C.1970) to the same effect; and note the unanimous opinion in Philpott et al. v. Essex County Welfare Board, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), holding that the New Jersey welfare agency was barred from recovery of advance payments

of monthly disability assistance to recipient in view of 42 U.S.C.A. § 407, providing against transferability or assignability, etc., of future disability insurance benefits because of the Supremacy Clause. Note also the extensive discussions of Health Care in 35 Law and Contemporary Problems, pp. 667 et seq., as to alternatives to the present provisions of Medicare. "Current discussions of national health insurance are based, first, on a commitment that medical care should be available to everybody, and, second, on a belief that the costs of medical care should be met through group payment. The commitment to availability reflects a *basic social policy* stemming from widespread belief that no one in modern society should suffer because medical care is not available when and where it is needed." (Page 669, italics added.); and the article, "The Law and Poor People's Access to Health Care," Norman L. Cantor, Page 901, et seq., of the same publication.

In Hartford Accident and Indemnity Co. v. Chiate, 13 Ariz.App. 321, 476 P. 2d 527 (1970), it was held under similar facts as here that an exclusion (or set-off) as to Medicare payments for medical expenses was applicable. The Chiate case may be distinguished in that the parties raised no issue as to whether Medicare is "insurance" within either of the provisions, supra, of Exclusion (n). It is herein held, following the Imvris case, that Medicare payments are not (contractual) insurance provisions so as to make applicable Exclusion (n), notwithstanding that the word "insurance" is used in 42 U.S.C.A. § 1395g, and other federal statutes, as contended by Aetna. Aetna's original Point III, as supplemented in its brief on rehearing, Point IA. is ruled against it.

It is contended by Aetna under its Point IV that the court erred in finding vexatious delay and awarding the penalty and attorney fees, because the refusal was based upon an open question of law.

The precise matter of the validity of the rather recently employed "Reimbursement

and Trust Agreement" provisions in medical payment coverages of insurance policies has not been litigated in this state. The matter has been an open question of law as contended by Aetna, and the award of damages for vexatious delay was for this reason in error. Cohen v. Metropolitan Life Insurance Company, 444 S.W.2d 498, 506[10, 11] (Mo.App.1969); Sommer v. Metropolitan Life Insurance Company, 449 S.W.2d 644, 647[2] (Mo.1970).

That part of the judgment awarding damages for vexatious delay is reversed. Otherwise, the judgment is affirmed.

All concur.