**Gary L. HAYS, Individually and as Next Friend for minor child, Nicholas L. Hays, and as Representative of a Class of Persons similarly Situated, Appellant,**

v.

**MISSOURI HIGHWAYS AND TRANSPORTATION COMMISSION, Respondent.**

**No. WD 59456.**

Missouri Court of Appeals, Western District.

Oct. 30, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 2001.

John Berger, Rolla, for appellant.

Melinda Grace-Beasley, Jefferson City, for respondent.

RONALD R. HOLLIGER, Judge.

Appellant Gary Hays (Hays) appeals the trial court's judgment in favor of respondent Missouri Highways & Transportation Commission (MHTC). The trial court granted judgment in favor of MHTC, finding that it properly withheld insurance benefits under a group medical and life insurance plan due to Hays' refusal to execute a reimbursement agreement. Because we hold that the reimbursement agreement is void under public policy grounds, we reverse the judgment of the trial court.

Hays and his son were insured under a group medical and life insurance plan (the Plan) provided by MHTC. Hays' son was seriously injured in an automobile collision in February 1998, incurring approximately $28,000 in medical expenses. Those expenses were subsequently submitted to the Plan's third-party administrator, Westport Benefits, LLC, for payment. In May 1998, Westport Benefits sent Hays a letter indicating that before processing of the claim could continue, it was necessary for Hays to execute a document entitled "Agreement for Reimbursement, Assignment and Lien" (hereinafter "Reimbursement Agreement"). Hays, through counsel, refused to execute the Reimbursement Agreement, believing it to be an improper partial assignment of Hays' (and his son's) personal injury action against the third party tortfeasor. As a result of Hays'

refusal, Westport Benefits declined to complete processing of Hays' claim for benefits.

Hays subsequently brought a declaratory judgment action against MHTC, seeking to enforce his rights to benefits under the Plan, contending that those benefits were improperly denied upon his refusal to execute the Agreement. MHTC argued that requiring execution of the Reimbursement Agreement was authorized under the provisions of the Plan, and that Hays' refusal to execute the Reimbursement Agreement constituted a breach of contract relieving MHTC of providing benefits under the Plan.

Hayes argued that the language of the Plan and Reimbursement Agreement violated public policy which prohibits assignment of a personal injury claim. MHTC contended that the language of the Reimbursement Agreement and the Plan did not constitute a partial assignment of Hays' personal injury action, which would be void under Missouri public policy. Instead, it argued that those documents merely provided MHTC with a lien against any potential recovery Hays might realize from a personal injury action against the third party tortfeasor.

The case was submitted to the trial court upon stipulated facts. After review of those facts, the trial court found in favor of MHTC on the basis that the Plan and Reimbursement Agreement granted MHTC a lien on proceeds of any possible judgment or settlement involving the third party tortfeasor and that such a lien was not violative of public policy. Hays now appeals the trial court's judgment in favor of MHTC.

Hays challenges the trial court's judgment that the sole effect of the Plan and the Agreement was to grant MHTC a lien on the proceeds of a potential settlement or judgment. That challenge is premised

upon three interrelated arguments. First, Hays contends that a lien is a charge on property for the purposes of securing payment of a debt, and Hays was not indebted to MHTC. Second, Hays argues that the plain language of the Plan attempts to grant an impermissible subrogation interest in a plan participant's personal injury claim against a third party tortfeasor. Third, Hays argues that the Agreement he refused to execute attempts a similar grant of a subrogation interest.

■ It is well settled that in Missouri, a claim for personal injury cannot be assigned, in whole or in part. *Freeman v. Berberich*, 332 Mo. 831, 60 S.W.2d 393, 401 (1933) (citing *Remmers v. Remmers*, 217 Mo. 541, 117 S.W. 1117 (1909); *Beechwood v. Joplin–Pittsburg Ry. Co.*, 173 Mo.App. 371, 158 S.W. 868 (1913); *Smith v. Kennett*, 18 Mo. 154, 155–56 (1853)). This prohibition was adopted by the courts of this state to prevent the "trafficking of lawsuits for pain and suffering." *Ford Motor Credit Co. v. Allstate Ins. Co.*, 2 S.W.3d 810, 813 (Mo.App.1999) (citing *Marshall v. Northern Assurance Co. of America*, 854 S.W.2d 608, 610 (Mo.App. 1993)). Insurers paying benefits to insureds as a result of injuries caused by third persons claim an interest in recovering those costs if the insured obtains a settlement or collects upon a judgment against the third party. To that end, insurers have repeatedly attempted to draft policy provisions or establish other requirements for the purposes of seeking reimbursement from the insured in such situations.

Such provisions or other requirements have been regularly invalidated by the appellate courts. For example, an attempt by an insurer providing medical pay coverage in an automobile insurance policy to obtain a subrogation interest in the insured's personal injury claim against a third party tortfeasor was held void as against public policy. *Travelers Indem. Co. v. Chumbley*, 394 S.W.2d 418, 424 (Mo. App.1965). An insurer providing health and medical insurance could not require the insured to grant the insurer an equitable interest in the insured's personal injury claim. *Jones v. Aetna Cas. & Sur. Co.*, 497 S.W.2d 809, 813 (Mo.App.1973). An assignment of the potential proceeds of a personal injury claim has likewise been held invalid. *Schweiss v. Sisters of Mercy, St. Louis, Inc.*, 950 S.W.2d 537, 538 (Mo. App.1997). Further, this court has held that an insurer cannot require an insured to sign an agreement under which the insured agrees to reimburse the insurer if the insured obtains a settlement or judgment against a third party tortfeasor. *See Waye v. Bankers Multiple Line Ins. Co.*, 796 S.W.2d 660, 661 (Mo.App.1990). Each of these holdings was premised upon the longstanding policy prohibiting the assignment, forced or otherwise, of a personal injury claim whether denominated an assignment, subrogation interest, or agreement to reimburse.

Several exceptions exist to this general rule. First, the Uninsured Motorist statutes contain a provision authorizing the assignment to the insurer of an insured's personal injury claim against an uninsured motorist. *See* § 379.203, RSMo (2000). MHTC does not contend that this first exception applies to the case at bar. It has also been held that the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, permits employers with self-insurance plans that fall within the Act to obtain subrogation rights in a personal injury claim by an insured against a third party, provided the plan documents explicitly grant such a right. *See McIntosh v. Pac. Holding Co.*, 992 F.2d 882, 883 (8th Cir.1993); *Baxter ex rel. Baxter v. Lynn*, 886 F.2d 182, 186 (8th

Cir.1989). This exception is based upon specific language within the ERISA code that expressly preempts state law in this area. *See FMC Corp. v. Holliday,* 498 U.S. 52, 56–58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). MHTC does not claim that the group plan in the case at bar is a plan governed by ERISA that would qualify for this latter exception.

Instead, MHTC looks to an exception announced relatively recently to support its claim that the Reimbursement Agreement does not violate public policy. MHTC relies upon this court's holding in *Ford Motor Credit Co. v. Allstate Insurance Co.,* 2 S.W.3d 810 (Mo.App.1999), that a consensual lien by a creditor on the proceeds of the debtor's anticipated settlement of a personal injury action did not violate public policy. MHTC places great reliance upon this holding, arguing that the Group Health Plan and the Reimbursement Agreement it demanded Hays execute granted MHTC only a lien on the proceeds of any settlement or judgment Hays might obtain against the third party tortfeasor that caused his son's injuries.

To decide the ultimate question of whether the Group Health Plan or the Agreement are void on public policy grounds, we look to the documents themselves. In that process, the general rules of construction apply. We look first to the plain language of those documents. *See Parker v. Pulitzer Publ'g. Co.,* 882 S.W.2d 245, 249 (Mo.App.1994). If we find that a provision in those documents is ambiguous, that ambiguity will be resolved in favor of Hays and not MHTC. *See Lutsky v. Blue Cross Hosp. Svc., Inc.,* of Mo., 695 S.W.2d 870, 874 (Mo. banc 1985).

■ As MHTC's denial of benefits flowed from Hays' refusal to sign the Reimbursement Agreement, we look first at the language of that agreement. The relevant language of the Reimbursement Agreement states as follows:

> In consideration of benefits heretofore or in the future to be received from my Group Health Plan for which my need is predicated upon injury believed to have been sustained as [the] result of the act or omission of a third party, I, the undersigned, agree as follows:
>
> 1. To reimburse the Group Health Plan (to the extent of any and all benefit provided for and paid by the Group Health Plan) [sic] whether received through the course of litigation, settlement, or otherwise.
>
> 2. To hereby assign to the Group Health Plan (to the extent to which benefits have been paid) any recovery benefits to which I become entitled whether through the course of litigation, settlement, or otherwise.
>
> 3. I acknowledge that I am aware that the Group Health Plan may be entitled to a lien (to the extent to which benefits have been paid) on any litigation or claim which seeks damages for injuries.

The first numbered paragraph, despite its flawed syntax, appears to be intended to require a plan participant to reimburse the Plan if the participant obtains any payment on account of an injury caused by a third party, regardless of whether the payment arises from a settlement, judgment, or other means. The second numbered paragraph explicitly attempts an assignment of the proceeds of the plan participant's personal injury claim. MHTC does not deny that the first paragraph runs afoul of public policy as expressed in the cases discussed earlier. This is precisely the type of arrangement that was held invalid in *Schweiss.* The trial court found that the second paragraph of the agreement operated to convey a lien interest despite the fact that this paragraph says

nothing about a lien and instead speaks of an assignment. MHTC's argument that the Reimbursement Agreement only purported to grant a lien is inconsistent with the express, plain language of that document. We agree with Hays that the first two numbered paragraphs entail a partial assignment of a plan participant's rights in a personal injury claim. To the extent that the second paragraph speaks of an assignment of proceeds as opposed to an assignment of the claim, we note that the court in *Schweiss* found that although "this may be a distinction, it is a distinction without a difference." 950 S.W.2d at 538. As such, those provisions in paragraphs 1 and 2 are against public policy and void. *Id.* at 539.

■ Only the third paragraph of the Reimbursement Agreement discusses a lien interest in favor of the Plan, but only to the extent that it advises the plan participant that the Plan might seek a lien on any recovery the participant may obtain against a third party tortfeasor. We also note that the Reimbursement Agreement contains no severability clause. Moreover, Hays was requested to sign an agreement to reimburse and assign his interest in the proceeds, not an agreement to grant a lien. Thus, even if the third numbered paragraph was sufficient to grant such a lien, an issue we do not reach, the invalidity of the provisions discussed above renders the entire Reimbursement Agreement void. *See Jones v. Aetna Cas. & Sur. Co.,* 497 S.W.2d 809, 813 (Mo.App.1973). Accordingly, MHTC could not properly withhold Plan benefits from Hays due to his refusal to execute the Reimbursement Agreement. *See id.*

The parties also discuss the validity of certain portions of the Plan documents themselves. Their arguments are primarily directed at Article XV of the Plan, which states:

15.01 *General Information*

To the extend that Benefits for Covered Services are provided or paid under this Plan, the Medical Plan will be subrogated and succeed to any rights of recovery of a Participant for expenses incurred against any person or organization, except insurers on policies of insurance issued to and in the name of the Participant.

15.02 *Third–Party Recovery*

The participant will pay to the Medical Plan all amounts recovered by suit, settlement, or otherwise from any liable third party or his insurer to the extent of the Benefits provided or paid under this Plan.

15.03 *Participant Assistance*

The Participant will take such action, furnish such information and assistance, and execute such papers as the Board of Trustees or Claims Administrator may require to facilitate the enforcement of its rights, and the Participant will take no action prejudicing the rights and interests of the Plan. In the event of overpayment of any Benefits even if made to the Provider, it shall be the Participant's responsibility to reimburse the Plan for the excess payment.

Despite the parties' extensive discussion of the effect of the plan provisions, and our misgivings [1] about the validity of at least some of those provisions, we need not

---

**1.** Specifically, the grant of a subrogation interest to MHTC in § 15.01 would seem to be contrary to the holding of *Travelers Indem. Co. v. Chumbley,* 394 S.W.2d 418 (Mo.App. 1965). In addition, the remaining sections of the Article might raise concern under our opinion in *Ford Motor Credit Co. v. Allstate Ins. Co.,* 2 S.W.3d 810 (Mo.App.1999), as they appear to be an attempt to grant the Plan administrators a mechanism to control or influence a plan participant's pursuit of a third party tortfeasor.

reach their arguments. Our discussion of the validity of the Reimbursement Plan is dispositive. The stipulated facts before the trial court provide that Hays' claim for benefits under the plan would have been processed and paid but for his refusal to sign the Reimbursement Agreement. Thus, by MHTC's stipulation, there is no provision under the Plan document itself which would preclude the processing of Hays' claim or the payment of benefits.

■ MHTC raises one final argument, contending that it is entitled to a common law exception to the rule that claims for personal injury may not be assigned. Specifically, MHTC points to a passage of Blackstone's Commentaries which states that a "chose in action" could be assigned to the sovereign, despite the general principal that choses in action could not be assigned. This passage was also briefly discussed in a footnote of the trial court's judgment. The cited passage is contained within Blackstone's discussion of the contractual conveyance of nonpossessory rights (as opposed to rights of possession). In that section, Blackstone wrote:

First, then it is an *agreement*, a mutual bargain or convention; and therefore there must be at least be two contracting parties, of sufficient ability to make a contract: as where A contracts with B to pay him 100 £ and thereby transfers a property in such sum to B. Which property is however not in possession, but in action merely, and recoverable by suit at law; wherefore it could not be transferred to another person by the strict rules of the antient [sic] common law: for now *chose* in action could be assigned or granted over, because it was thought to be a great encouragement in litigiousness, if a man were allowed to make over to a stranger his right of going to law. But this nicety is now disregarded: though, in compliance with the antient [sic] principal, the form of assigning a *chose* in action is in the nature of a

declaration of trust, and an agreement to permit the assignee to make use of the name of the assignor, in order to recover the possession. And therefore, when in common acceptation a debt or bond is said to be assigned over, it must still be sued in the original creditor's name; the person to whom it is transferred, being rather an attorney than an assignee. But the king is an exception to this general rule; for he might always either grant or receive a *chose* in action by assignment: and our courts of equity, considering that in a commercial country almost all personal property must necessarily lie in contract, will protect the assignment of a *chose* in action, as much of the law will that of a *chose* in possession.

2 William Blackstone, Commentaries *442. (footnotes omitted). MHTC contends that a "chose in action," as discussed here, is a cause of action based on a tort theory. MHTC argues that while assignments of tort claims were not generally permitted at common law, this passage indicates that such claims could be assigned to the king. MHTC also cites the general proposition that in interpreting and applying the English common law in this country, the government stands in the place of the king. Thus, MHTC claims that as an arm of the government, it is entitled to the benefits of that common law exception. The trial court adopted MHTC's position in a footnote to its judgment in favor of the commission.

We disagree with MHTC's interpretation of this passage on two grounds. First, we disagree with the contention that a chose in action, as employed by Blackstone, was limited to merely tort claims. Indeed, Blackstone uses that term in the quoted section above to refer also to contract-based causes of action. He discusses the specific example of an assignment of a promissory note or other instrument of indebtedness as an example of the assign-

ment of a chose of action. Second, Blackstone also makes it clear that the common law restrictions on assignments of a chose of action had been effectively abandoned by the time he penned his treatise. He clearly states that the equity courts had been routinely enforcing assignments of choses of action despite the common law prohibition on such assignments in the courts of law. As such, the exception discussed by Blackstone was but one crack in a doctrine that was already riddled with other exceptions. As that doctrine had largely become immaterial by Blackstone's time, we are not convinced that it provides the foundation for the Missouri prohibition on assignment of personal injury actions.

Nor do we think that the exception relied upon by MHTC applies in the present context. Hays argues against the application of this claimed common law exception, arguing that the evolution of society and the law argues against applying this exception to the common law prohibition on the assignment of choses of action. We agree with Hays that societal change counsels caution in evaluating whether to apply this exception in the case at bar. Beyond its brief discussion of the exception, MHTC makes no attempt to argue how employing the exception is appropriate. Hays contends that MHTC, in providing the group health plan, should be held to the same public policy constraints as a private insurer. Although the State might be able, through legislative action, require such reimbursements, that has not occurred here. Until the legislature has expressed a different public policy for state health insurance plans, we follow the precedent set forth above. We hold that the restriction on assignments discussed in *Travelers Indemnity Co. v. Chumbley* and its progeny is fully applicable to the MHTC group health plan.

As discussed above, the Reimbursement Agreement required by MHTC is void as against public policy. As such, the processing and payment of Hays' claim for benefits under the plan could not be conditioned upon his execution of that document. The parties stipulated that Hays' claim would have been processed and paid but for his refusal to sign the Reimbursement Agreement. The trial court, therefore, erred in granting judgment in favor of MHTC.

Accordingly, the judgment of the trial court is reversed, and the cause remanded for further proceedings consistent with this opinion.

EDWIN H. SMITH, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.