Pamela SCROGGINS, Plaintiff–Respondent,

v.

RED LOBSTER, et al., Defendants–Interpleader Plaintiffs,

and

Sisters of Mercy Health System, Interpleader Defendant–Appellant.

No. SD 30214.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 6, 2010.

Motion for Rehearing or Transfer Denied Aug. 30, 2010.

Application for Transfer Denied Dec. 21, 2010.

---

Stanley G. Schroeder, Whitney D. Pile, St. Louis, for Appellant.

Roger Johnson, Joplin, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Pamela Scroggins ("the Participant") was seriously injured in a non-work-related trip and fall accident at a Red Lobster on February 17, 2007, while employed at St. John's Hospital in Springfield, Missouri. The Participant's medical expenses were covered by an employee contributory self-funded health plan ("the Plan") that provided benefit coverage for employees of St. John's Hospital, a subsidiary of Sisters of Mercy ("the Insurer") which is a non-profit corporation.[1] As a result of the trip and fall, the Participant sued Red Lobster, Inc., which is a subsidiary of GMRI, Inc. ("GMRI"), and the manager of the Red Lobster, Gary Rush. The lawsuit resulted in a settlement. One of the Plan's provisions purports to grant the Insurer a lien upon the proceeds of the Participant's tort recovery, and a right to payment from any recovery, to the extent of the sum that the Insurer paid for injuries the Participant

1. The Plan is not subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), because the Insurer is a religious institution and a non-profit corporation and, as such, the Plan is a church plan. 29 U.S.C. section 1001, *et seq.* (2006); 29 U.S.C. section 1002(33)(A) (2006); 29 U.S.C. section 1003(b)(2) (2006).

suffered. The trial court found the lien to be a veiled partial assignment of the Participant's personal injury claim and, as such, invalid as contrary to longstanding Missouri public policy. We agree.

Section 5.02(h) of the Plan provides that Notwithstanding the foregoing subsections of this Section 5.02 ... with respect to a Covered Individual whose coverage relates to a Participating Employer located in the State of Missouri, if a Covered Individual sustains an injury or sickness and a third party is or may be liable for compensating the Covered Individual for such injury or sickness ... the Plan *shall have a lien* on the proceeds recovered by or on behalf of the Covered Individual from the Third Party, to the extent of the amount of Covered Expenses that are paid or payable with respect to the sickness or injury.

(emphasis added). The Plan also contains the following provisions: (1) Section 5.02(g)(4) requires the Participant to "[a]gree not to settle a claim against the Third Party without the consent of the Plan."; (2) Section 5.02(a)(i) gives the Plan a "right to be reimbursed for Covered Expenses paid with respect to the injury or sickness for which the Third Party is liable, from any judgment, award, formal or informal settlement, contract or any other payment of any kind, paid to ... the Covered Individual by such Third Party."; (3) Section 5.02(a)(iii) gives the Plan "the right of subrogation to assert the Covered Individual's right to recover against such Third Party."; and (4) Section 10.09 contains this severability clause: "If any provision of this Plan shall be held illegal or invalid, the remaining provisions of this Plan shall be construed as if such provision had never been included."

Before the final settlement payment was made, the Insurer advised GMRI's insurer, Liberty Mutual, of its alleged lien upon the settlement proceeds to the extent of the Plan's $151,323.83 in payments of medical expenses incurred as a result of the accident. GMRI, concerned about the potential for double liability that could result if it paid the Participant and was later found liable to the Insurer, filed a motion for leave to add the Insurer to the underlying action the Participant brought against GMRI, and sought a declaration of ownership of the $151,323.83 in dispute. The trial court, acting on cross-motions for summary judgment, found the lien was, in substance, a partial assignment of the Participant's personal injury claim and sustained summary judgment in favor of the Participant.

We review a summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper where the motion, response, reply, and sur-reply "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" Rule 74.04(c)(6).[2] Under *de novo* review of a summary judgment, this Court will review the record from the trial court and independently decide whether there were no genuine issues of material fact and that the successful party was entitled to judgment as a matter of law. *In re Gene Wild Revocable Trust*, 299 S.W.3d 767, 773–74 (Mo.App. S.D.2009). We review the record in the light most favorable to the party whom judgment was entered against, and draw all reasonable inferences in that party's favor. *ITT*, 854 S.W.2d at 376. In this case, the facts are not contested. It is

**2.** All references to rules are to Missouri Court Rules (2009), and all references to statutes are to RSMo Cum.Supp.2005, unless otherwise specified.

an issue of law whether the trial court reached a proper conclusion based upon the facts. *Schroeder v. Horack,* 592 S.W.2d 742, 744 (Mo. banc 1979).

■ Missouri public policy prohibits the transfer of a personal injury claim, in whole or part. *Travelers Indem. Co. v. Chumbley,* 394 S.W.2d 418, 423–25 (Mo. App.Spfld.D.1965). This rule holds except in the limited circumstance when the transfer is of the proceeds of a potential claim and is granted to an existing creditor. *Ford Motor Credit Co. v. Allstate Ins. Co.,* 2 S.W.3d 810, 812–13 (Mo.App. W.D. 1999). This has been Missouri's policy since at least 1913 and, in all likelihood much longer, as the prohibition against the assignment of personal tort claims dates back to English common law and the Middle Ages.[3] In 1913, this Court explained that "[t]here is every reason for holding that a cause of action for personal injuries, where the gist of the damages recovered is physical pain and mental anguish, should not be the subject of barter or trade, or a matter of profit to the creditors of the injured party." *Beechwood v. Joplin–Pittsburg Ry. Co.,* 173 Mo.App. 371, 158 S.W. 868, 870 (Mo.App.Spfd.D.1913). The Western District of this Court, contributed this brief history concerning insurers in *Hays v. Missouri Highways and Transp. Comm'n,* 62 S.W.3d 538 (Mo.App. W.D. 2001):

> Insurers paying benefits to insureds as a result of injuries caused by third persons claim an interest in recovering those costs if the insured obtains a settlement or collects upon a judgment against the third party. To that end, insurers have repeatedly attempted to draft policy provisions or establish other requirements for the purposes of seeking reimbursement from the insured in such situations.

> Such provisions or other requirements have been regularly invalidated by the appellate courts.

*Id.* at 540.

■ In *Schweiss v. Sisters of Mercy, St. Louis, Inc.,* 950 S.W.2d 537 (Mo.App. E.D. 1997), for example, the court held that a reimbursement provision in a health plan was unenforceable and that the insurer could not refuse to pay medical expenses based on the insured's refusal to sign a reimbursement agreement. *Id.* at 538–39. The rationale of the public policy is simple, Missouri court's have long felt it is outside the province of our courts to coin into money an injured party's pain and suffering for the profit of others. *Forsthove v. Hardware Dealers Mut. Fire Ins. Co.,* 416 S.W.2d 208, 216 (Mo.App.St.L.D.1967). In short, allowing the assignment of claims would lead to a secondary market where speculators would profit off of the pain and suffering of others.[4]

In *Jones v. Aetna Cas. & Sur. Co.,* 497 S.W.2d 809 (Mo.App.K.C.D.1973), the Kansas City District of this Court, dealing with similar facts as those here and a substan-

---

**3.** W.S. Holdsworth, *The History of the Treatment of Choses of Action in English Common Law,* 33 HARV. L.REV. 997, 1006–07 (1920). The Supreme Court of the United States spoke to the idea in 1828 in *Comegys v. Vasse:* "In general ... personal *torts* ... are not capable of ... assignment." 26 U.S. 193, 213, 1 Pet. 193, 7 L.Ed. 108 (1828).

**4.** Some advocate for the creation of such markets. *See* Susan Lorde Martin, *Syndicated Lawsuits: Illegal Champerty or New Business Opportunity?,* 30 AM. BUS. L.J. 485, 507 (1992) ("It is difficult to justify why lawyers may maintain litigation in exchange for a share of the proceeds while other investors may not."); Marc J. Shukaitis, *A Market in Personal Injury Tort Claims,* 16 J. LEGAL STUD. 329 (1987) (advocating that plaintiffs should be able to sell personal injury claims).

tially identical insurance policy provision, settled the issue at hand. In *Jones,* the insured was injured in an automobile collision, suffered medical damages which the insurer paid, and then settled with the tortfeasor that negligently caused the collision. *Id.* at 810–11. In *Jones'* policy, the insurer attempted to obtain a lien over the proceeds of any claims it had paid that the insured later recovered from the third-party tortfeasor. *Id.* Specifically, the language of the policy required the insured to agree that:

> [T]he Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; and the Company *shall have a lien* to the extent of such payment[.]

*Id.* at 811 (emphasis added). Under *Jones'* policy, the insured was also purportedly required to hold the proceeds of any settlement or judgment "in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such bodily injury[.]" *Id.* The court noted there was no statute authorizing the insurer "to preserve its right in equity to recover under its trust theory amounts paid to or on behalf of [the insured] for her medical expenses." *Id.* at 813. The court found the lien/trust theory tantamount to a subrogation right because, if valid, the lien/trust provisions "could only give rise to a right in equity to enforce it[.]" *Id.* Ruling in favor of the insured, the court concluded that "[t]he trust theory is similar to a subrogation right, which under the law of this state, absent a statute, is invalid as amounting to an assignment of a claim for personal injuries." *Id.*

We find *Jones* to be persuasive. In *Jones,* the policy required the insured to agree that the insurer "*shall have a lien* to the extent of such payment" received by the insured from "any person or organization legally responsible for the bodily injury because of which such payment is made[.]" *Id.* at 811. (emphasis added). Correspondingly, the policy issued in this case, specifically section 5.02(h) of the Plan, required the Participant to agree that the Insurer "*shall have a lien* on the proceeds recovered by or on behalf of the Covered Individual from the Third Party, to the extent of the amount of Covered Expenses that are paid or payable with respect to the sickness or injury[.]" (emphasis added). The court in *Jones* found the policy to be "similar to a subrogation right, which under the law of this state, absent a statute, is invalid as amounting to an assignment of a claim for personal injuries." *Id.* at 813.

On the other hand, two cases cited by the Insurer where the court allowed a plaintiff to grant a lien on a personal injury settlement to a third party are distinguishable. In *Ford Motor Credit Co. v. Allstate Ins. Co.,* 2 S.W.3d 810 (Mo.App. W.D.1999), the Western District of this Court held that there was nothing contrary to Missouri public policy in allowing a future plaintiff to grant a lien over future personal injury settlement proceeds to Ford Motor Credit, a creditor who previously loaned to the plaintiff funds used to buy an automobile. *Id.* at 813. The court went on to find "no indication that Ford Motor Credit had the power to do anything to further or to pursue [the plaintiff's] claim. Had [the plaintiff] chosen to abandon his claim, Ford Motor Credit would have been powerless to stop him." *Id.* In contrast to *Ford,* here the Insurer included a provision in the Plan requiring the Participant to "[a]gree not to settle a claim against the Third Party without the consent of the Plan." That provision indi-

cates the Insurer had a clear voice in the control of any settlement.

In the other case where the court has allowed a plaintiff to a grant a lien on a personal injury settlement, *Marvin's Midtown Chiropractic Clinic, L.L. C. v. State Farm Mut. Auto. Ins. Co.*, 142 S.W.3d 751 (Mo.App. W.D.2004), the court found the case to be analogous to *Ford,* and held that it was not against public policy for a plaintiff to grant a contractual lien in favor of a chiropractor on the potential proceeds of a personal injury claim to satisfy the plaintiff's debt to the chiropractor who provided the plaintiff with chiropractic services. *Marvin's,* 142 S.W.3d at 755. The court also noted the difference between an assignment and a lien. *Id.* at 753–54. The court explained that "[a] lien is a charge *on* property for payment or discharge of a debt or duty. An assignment, on the other hand, transfers to another all or part of one's property, interest, or rights. An assignment is a right *in* the property itself."[5] *Id.* (internal citations omitted; emphasis in original). The court upheld the validity of the chiropractor's lien. *Id.* at 755.[6]

■ A lien is not an independent cause of action. Both the chiropractic clinic and the credit company in *Marvin's* and *Ford*

had an independent cause of action against the debtors if the debtors failed to prosecute their third-party tort causes of action. *Marvin's,* 142 S.W.3d at 755; *Ford,* 2 S.W.3d at 812–13. The lien was simply a mechanism that aided in the collection of specific proceeds from specific property flowing from a specific, independent underlying lawsuit. In this case, the Insurer is not a creditor and has no valid independent underlying cause of action against the Participant.

The Participant paid for health care coverage. The Insurer was obligated to provide those benefits regardless of whether the Participant pursued her personal injury claim. Missouri courts have never allowed a provider to be reimbursed for medical expenses that the insured recovers in a settlement from a liable third party under a lien theory, and we decline to do so now. The judgment of the trial court is affirmed.

SCOTT, C.J., concurs in separate opinion.

FRANCIS, J., concur.

DANIEL E. SCOTT, Chief Judge, concurring.

I concur. Missouri's established rule bars Appellant from acquiring any part of

---

5. Black's Law Dictionary defines the word lien as "[a] legal right or interest that a creditor has in another's property[.]" BLACK'S LAW DICTIONARY 941 (8th Ed.2004). A creditor is "[o]ne to whom a debt is owed; one who gives credit for money or goods." *Id.* at 396.

6. It is interesting to note that when *Marvin's,* was decided in 2004, there was a 2003 statute authorizing a chiropractor's lien on the patient's personal injury claim, giving the chiropractor a right to share up to fifty percent of a claim's proceeds. Section 430.225 RSMo Cum.Supp.2003. The events leading to the lien in *Marvin's* occurred in 2002. *Marvin's,* 142 S.W.3d at 753. The 1999 version of section 430.225 also authorized chiropractors' liens, but it was held unconstitutional as

violating the single subject rule of Article III, section 23 of the Missouri Constitution in 2002 in *SSM Cardinal Glennon Children's Hosp. v. State,* 68 S.W.3d 412, 416–18 (Mo. banc 2002). The 2003 amended statute likewise provides for chiropractors' liens. The chiropractor's lien portion of section 430.225 can be applied retroactively without violating the Missouri Constitution Article I, section 13, under *Hess v. Chase Manhattan Bank, USA, N.A.,* 220 S.W.3d 758, 769 (Mo. banc 2007) (Procedural laws can be applied retrospectively without violating Missouri Constitution Article I, section 13, substantive laws cannot). In other words, there was a statutory basis for holding the chiropractor's lien valid in *Marvin's.*

 

Ms. Scroggins' rights against a tortfeasor by reason of paying medical expenses. *Jones v. Aetna Cas. & Sur. Co.*, 497 S.W.2d 809, 812 (Mo.App.1973). Assignments, subrogation, and contractual "trust" or reimbursement provisions all fail alike.[1] Even liens authorized by another state's laws have been trumped by our strong public policy. *See Farmers Ins. Co. v. McFarland*, 976 S.W.2d 559, 565–66 (Mo.App.1998); *Gilmore v. Attebery*, 899 S.W.2d 164 (Mo.App.1995).

*Marvin's* and *Ford Credit*[2] are outliers that are intellectually defensible, yet a slippery slope toward case law balkanization. *Cf. White v. Director of Revenue*, No. SC90400, slip op. at 9–14 (Mo. banc Aug.3, 2010), which describes in part and seeks to remedy sixteen years of fragmented precedent in license revocation cases. *Marvin's* relies solely on *Ford Credit*, which summarily dismissed our Eastern District's observation that assigning a claim vs. assigning its proceeds "is a distinction without a difference."[3] Neither case mentions *McFarland* or *Gilmore*, prior opinions from the same district that declined to treat liens differently from assignment, subrogation, or reimbursement claims.

A lawyer with the time and interest might parse the distinctions between such remedies, but they all seek the same end in this context. Public policy shields Ms. Scroggins from assignment, subrogation, trust theory, and contractual reimbursement claims. To treat lien clauses otherwise end-runs these protections and, as in *Schweiss*, is a distinction *without* a difference.

---

1. *See, e.g., Waye v. Bankers Multiple Line Ins.*, 796 S.W.2d 660 (Mo.App.1990)(reimbursement clause); *Jones*, 497 S.W.2d at 813 (trust theory); *Travelers Indem. Co. v. Chumbley*, 394 S.W.2d 418, 425 (Mo.App.1965)(subrogation). The few exceptions mandated by Missouri statutes or federal law do not apply here.

2. *Marvin's Midtown Chiro. Clinic, L.L.C. v. State Farm Mut. Auto. Ins. Co.*, 142 S.W.3d 751 (Mo.App.2004) and *Ford Motor Credit Co. v. Allstate Ins. Co.*, 2 S.W.3d 810 (Mo.App. 1999), which were cited by Appellant and discussed in the principal opinion.

3. *Schweiss v. Sisters of Mercy, St. Louis, Inc.*, 950 S.W.2d 537, 538 (Mo.App.1997), *distinguished in Ford Credit*, 2 S.W.3d at 812–13.