

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| BODY TREATS ETC., LLC, | ) | No. ED113028 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Perry County |
| vs. | ) | Cause No. 24PR-AC00202 |
| | ) | |
| MATT TARRILLION, | ) | Honorable Craig D. Brewer |
| | ) | |
| Appellant. | ) | Filed: August 19, 2025 |

## Introduction

Matt Tarrillion ("Tarrillion") appeals from the trial court's judgment entered in favor of Body Treats Etc., LLC[1] ("Body Treats") on its unlawful detainer action against him. In his sole point on appeal, Tarrillion argues the evidence established he is a tenant under the lease at issue and he, therefore, has an equal right to possession of the property just as the other two tenants. This Court holds the trial court's judgment is against the weight of the evidence because the record supports Tarrillion is a tenant pursuant to the lease at issue.

Accordingly, the judgment of the trial court is reversed, and this case is remanded for proceedings consistent with this opinion.[2]

---

[1] "LLC" stands for limited liability company.

[2] Body Treats filed a motion for sanctions wherein it argues Tarrillion's appeal is frivolous and requested attorney's fees. This motion was taken with the case. Given the disposition of this matter, the motion is denied.

**Factual and Procedural Background**

In 2023, Jamie Meyer ("Meyer") and Deborah Wehmeyer ("Wehmeyer") worked with Tarrillion at a massage business that was owned by Kim Hager.[3] In October 2023, Ms. Hager notified Tarrillion, Wehmeyer, and Meyer she was "wrapping up" her business at the end of the year, and they all would need to find another place to work. Meyer and Wehmeyer decided to continue doing business together and, in November 2023, created Body Treats. Around the same time, Wehmeyer and Meyer approached Tarrillion about working with them. Wehmeyer and Meyer maintain the parties reached an oral agreement whereby Tarrillion would rent a room on a month-to-month basis at Body Treats' new location to operate his own massage business.[4] Tarrillion was never made a member of Body Treats.

Wehmeyer and Meyer found a property located at 1516 Edgemont Blvd., Suite 110, Perryville, Missouri (the "Property") to use for their business. A lease agreement (the "2024 Lease") was executed for the Property with Hoeckele 4, LLC ("Landlord") for a term of three years, commencing on January 1, 2024. On the first page, the 2024 Lease lists the Tenant as "Body Treats Etc.[,]" and, on subsequent pages, it names Tarrillion, Wehmeyer, and Meyer as the tenants and guarantors, and their signatures appear in the respective signature blocks throughout the 2024 Lease.

A few months after the 2024 Lease was executed, on April 24, 2024, Body Treats gave Tarrillion a document titled "NOTICE TO TENANT OF ENDING OF TERM OF PERIODIC MONTH-TO-MONTH TENANCY AND NOTICE TO TENANT TO TERMINATE THE SAME." The notice provided Tarrillion was "the tenant in an unwritten month-to-month tenancy,"

---

[3] Ms. Hager was the owner of Body Treats Massage and Spa. She "wrapped up" her business near the end of 2023 and referred her clients to Tarrillion, Wehmeyer, and Meyer. We only mention her to supply context to the factual background.

[4] Tarrillion denies he reached an oral agreement with Body Treats.

Body Treats would "NOT agree to renew for the period of May 1, 2024," and Body Treats would "NOT be accepting any further rent from [him]." The notice also required Tarrillion to vacate and deliver possession of the Property to Body Treats on or before May 1, 2024.

On June 19, 2024, Body Treats filed a petition against Tarrillion for unlawful detainer. The petition alleged Body Treats "is the lawful occupant of the entirety of Suite 110, in that [Body Treats], the Limited Liability Company, by and through its agents apparent, are renting Suite 110 via a written lease agreement with the owner of Suite 110." The petition further claimed Tarrillion refused to vacate the Property and "has unlawfully and willfully detained the premises to which [Body Treats] has been entitled to possession since May 24, 2024." Body Treats sought an award of double the monthly rent amounts as well as attorney's fees and court costs incurred in connection with Tarrillion's refusal to vacate the Property.

A bench trial was held over two days on August 1, 2024 and August 22, 2024. Body Treats was represented by counsel and Tarrillion proceeded *pro se*. On the first day of trial, the trial court directed Tarrillion "to get [his] stuff and get out" of the Property.[5] Body Treats then asked the trial court whether it could change the locks, and the trial court granted the request. The trial court continued the trial to allow Tarrillion to retain counsel. On the second day of trial, Tarrillion chose to continue to represent himself *pro se*. After the trial concluded, the trial court entered a judgment

---

[5] Specifically, Tarrillion directs this Court to the following exchange with the trial court on the first day of trial:

The Court: I don't want you out there. Okay? What have you got there that you need?

Tarrillion: Well, all my equipment is out there. And I still would like to be able to work out there, Your Honor.

The Court: Well, it's not going to happen. Okay? That agreement is over one way or the other. All right? You're not a member of the LLC. So you need to get your stuff and get out. You hear? And you don't need to be in there at any point in time until this is resolved. What we're resolving is whether or not you have a right and entitlement to be there. But, again, why go to a place where you're not wanted? I don't understand that.

in favor of Body Treats wherein Tarrillion was ordered to immediately surrender possession of the Property and "to come retrieve his remaining personal belongings, within the next 30 days, or said belongings will be disposed of as [Body Treats] sees fit and necessary."

After the trial court entered its judgment, Tarrillion removed his remaining belongings from the Property. Subsequently, Landlord sold the Property to Hoeckele 2, LLC. Body Treats entered into a new one-year lease (the "2025 Lease"), commencing January 1, 2025, for the Property with Hoeckele 2, LLC. Pursuant to the terms of the 2025 Lease, the 2024 Lease was terminated. Tarrillion neither signed nor is named in the 2025 Lease.[6]

After Tarrillion filed the instant appeal, Body Treats filed a motion to dismiss the appeal for mootness, and this motion was taken with the case. Subsequently, our Court took the case under submission.

## Discussion

### Motion to Dismiss for Mootness

Before reaching the merits of Tarrillion's appeal, we address Body Treats' motion to dismiss this appeal for mootness.

"A threshold question in the appellate review of a controversy … is whether the matter has become moot due to subsequent events." *Fuemmeler v. Mike and Mark Farms, LLC*, 703 S.W.3d 249, 261 (Mo. App. W.D. 2024) (quoting *Riley v. Zoll*, 596 S.W.3d 654, 656 (Mo. App. S.D. 2020)). "An appeal is moot when a decision on the merits would not have any practical effect upon any then-existing controversy." *Id.* (quoting *Riley*, 596 S.W.3d at 656).

Body Treats argues this appeal is moot because the 2024 Lease was terminated by the execution of the 2025 Lease and Tarrillion acquiesced to the judgment by voluntarily surrendering

---

[6] Additional facts will be set forth as needed in our analysis.

the Property and removing his belongs from the Property.[7] For the reasons discussed below, both of these arguments have no merit.

First, the record supports the 2024 Lease, in fact, remained in effect during the pendency of this matter. When Body Treats filed its unlawful detainer lawsuit in June of 2024, the 2024 Lease had only been in effect for approximately five months and was not set to terminate until December 31, 2026. As explained in our analysis below, Tarrillion is named as a tenant and guarantor of the 2024 Lease. Nothing in the record demonstrates Tarrillion received notice of or consented to the termination of the 2024 Lease. As such, the 2024 Lease remained in effect, meaning our review of the trial court's determination would have a practical effect upon an existing controversy. *See id*. at 262 (finding the issue on appeal was not moot because the leases at issue had not expired and the court's determination would have a practical effect upon an existing controversy).

Second, there is no clear showing Tarrillion acquiesced to the judgment and voluntarily surrendered possession of the Property by removing his belongings. "Generally speaking, a defendant subject to an adverse unlawful detainer judgment renders moot all potential appellate claims by voluntarily surrendering possession of the subject property … (*i.e.*, a defendant 'acquiesces' to the propriety of the judgment by complying with it, absent prior issue of process to enforce the judgment)." *W. Plains Reg'l Animal Shelter v. Schnurbusch*, 615 S.W.3d 85, 87–88 (Mo. App. S.D. 2020). Furthermore, "[a] party may estop [himself] from appealing a judgment by performing any acts that are inconsistent with the right to appeal or which recognize the validity of the judgment." *P.M. Constr. Servs., Inc. v. Lewis*, 26 S.W.3d 284, 287 (Mo. App. W.D. 2000).

---

[7] Body Treats also argues, in a conclusory fashion, that this appeal is moot because Tarrillion failed to post a supersedeas bond or move for a stay. Because Body Treats fails to develop this argument in its brief, we do not analyze it here. *See Kader v. Harris Stowe Univ.*, 712 S.W.3d 820, 822 (Mo. App. E.D. 2024) (stating it is not within the province of this Court to decide arguments that are merely asserted but not developed).

In this case, the evidence is conflicting and does not clearly show Tarrillion voluntarily surrendered the Property. Although Tarrillion abided by the trial court's judgment, he: (1) was not allowed to conduct business or be on the Property as the locks were changed;[8] (2) was told his remaining belongings would be disposed of if he did not retrieve them; and (3) could not retrieve his belongings without scheduling an appointment. *See id.* (finding the appellant's unlawful detainer action was not moot because there was conflicting evidence as to whether the appellant voluntarily surrendered the property after the trial court entered its judgment). Accordingly, without a clear showing of mootness, this Court concludes it is proper to reach the merits on appeal. *See id.*

Body Treats' motion to dismiss the appeal for mootness is denied.

Point on Appeal

In his sole point on appeal, Tarrillion argues the trial court's judgment is against the weight of the evidence because he is a tenant under the 2024 Lease at issue and he therefore has an equal right to possession of the Property.

As an initial matter, we address Body Treat's argument that Tarrillion failed to preserve the issue for appellate review. Tarrillion asserts that, although he did not file a post-trial motion, the issue is preserved because he "raised the argument at trial, and the [2024] Lease at issue was a trial exhibit before the [trial] court."

"Rule 78.07[9] governs preservation of error through an after-trial motion, specifying which allegations of error must be raised in a motion for new trial or motion to amend in order to properly preserve them for appellate review." *Mennerich v. Mennerich*, 707 S.W.3d 34, 38 (Mo. App. E.D.

---

[8] At oral argument, Body Treats was unable to provide this Court with an exact date as to when the locks were changed, but it conceded the locks were changed.

[9] All references are to Missouri Supreme Court Rules (2024).

2025) (quoting *Mallard Pointe Lot Owners Ass'n, Inc. v. Flynn*, 680 S.W.3d 566, 572 (Mo. App. E.D. 2023)); *see also* Rule 78.07. Pursuant to Rule 78.07(b), "[i]n a case tried without a jury, a motion for a new trial or a motion to amend the judgment is not required to preserve an issue for appellate review '*if the matter was previously presented to the trial court.*'" *Mennerich*, 707 S.W.3d at 39 (emphasis in original) (quoting *Williams v. Williams*, 669 S.W.3d 708, 717 (Mo. App. E.D. 2023)); *see also* Rule 78.07(b). "Additionally, Rule 78.07(c) states, '[i]n all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review.'" *J.W. by K.C.G. v. N.R.W.*, 695 S.W.3d 231, 242 (Mo. App. W.D. 2024) (quoting Rule 78.07(c)).

In this matter, the primary issue before the trial court was whether Tarrillion had a right of possession to the Property. Tarrillion's sole point on appeal does "not relate to the judgment's form or language or dispute the lack of statutory findings to prompt Rule 78.07(c)'s application but, instead, address[es] the applicable substantive law." *See J.W. by K.C.G.*, 695 S.W.3d at 242; *see also* Rule 78.07(c). Accordingly, Tarrillion's argument is preserved for appellate review and we proceed to the merits of the issue on appeal.[10]

*Standard of Review*

"As in any court-tried case, we will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it misapplies the law." *Adams v. Ware*, 691 S.W.3d 304, 308 (Mo. App. E.D. 2024). "We review [the] evidence in the light most favorable to the prevailing party, giving that party the benefit of all reasonable

---

[10] Body Treats also highlights that Tarrillion violated Rule 84.04(c) by failing to provide a "fair and thorough statement of the facts" and instead only references favorable evidence. We disagree. As a point of clarification, Rule 84.04(c) requires an appellant's brief to include "a fair and **concise** statement of the facts[,]" not a thorough statement as Body Treats suggests. (emphasis added). Having reviewed Tarrillion's brief, we find no Rule 84.04(c) violations.

7

inferences and disregarding contrary evidence and inferences." *Goser v. Boyer*, 633 S.W.3d 482, 485–86 (Mo. App. E.D. 2021) (quoting *Fed. Nat'l Mortg. Ass'n. v. Wilson*, 409 S.W.3d 490, 494 (Mo. App. E.D. 2013)).

"Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence." *Fabius Vill. Mobile Home Park, L.L.C. v. Wyatt Land Holdings, L.L.C.*, 691 S.W.3d 316, 319 (Mo. App. E.D. 2024) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 205 (Mo. banc 2014)). An appellant's claim the "judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment." *Id.* (quoting *Ivie*, 439 S.W.3d at 205). "The against-the-weight-of-the-evidence standard serves only as a check on a [trial] court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Id.* at 319–20 (quoting *Ivie*, 439 S.W.3d at 206). This Court reviews the trial court's application of the law and statutory interpretation *de novo. Adams*, 691 S.W.3d at 308.

*Analysis*

This Court has a firm belief the trial court's judgment entered in favor of Body Treats on its unlawful detainer action against Tarrillion is against the weight of the evidence because the record supports Tarrillion is a tenant of the Property under the 2024 Lease.

"An action for unlawful detainer is a limited statutory action where the sole issue to be decided is the ***immediate right*** of possession to a parcel of real property." *Goser*, 633 S.W.3d at 486 (emphasis in original) (quoting *Wilson*, 409 S.W.3d at 495). Section 534.030.1[11] provides for unlawful detainer actions in the following four scenarios:

> [1] When any person willfully and without force holds over any lands, tenements or other possessions, after the termination of the time for which they were demised or let to the person, or the person under whom such person claims; or

---

[11] All references are to RSMo 2016.

8

[2] after a mortgage or deed of trust has been foreclosed and the person has received written notice of a foreclosure; or ...

[3] when premises are occupied incident to the terms of employment and the employee holds over after the termination of such employment; or

[4] when any person wrongfully and without force, by disseisin, shall obtain and continue in possession of any lands, tenements or other possessions, and after demand made, in writing, for the delivery of such possession of the premises by the person having the legal right to such possession, or the person's agent or attorney, shall refuse or neglect to vacate such possession, such person is guilty of an "unlawful detainer[.]"

*Adams*, 691 S.W.3d at 308; *see also* § 534.030.1. Accordingly, pursuant to § 534.030.1, "there are four classes of persons guilty of unlawful detainer: the holdover tenant class, the foreclosure class, the holdover employee class, and the wrongful possessor class." *Adams*, 691 S.W.3d at 309; *see also* § 534.030.1.

The parties are not clear as to which class applies in this case and, therefore, we discuss each in turn. First, in order to maintain there is a hold-over tenant, there must be a landlord-tenant relationship. *See Brown as Tr. of George E. Heard Revocable Tr., Dated February 24, 2000 v. Barnes*, 641 S.W.3d 241, 246 (Mo. App. W.D. 2021). The parties do not posit that they had a landlord-tenant relationship and there is nothing in the record to support that a landlord-tenant relationship existed between Tarrillion and Body Treats. Thus, Tarrillion does not fall into the holdover tenant class. Further, it is evident Tarrillion does not fall under the either the foreclosure or holdover employee class as the Property at issue was not foreclosed on nor do the parties claim to have an employer-employee relationship. This leaves us to determine whether Tarrillion's possession of the Property falls under the fourth class of § 534.030.1: the wrongful possessor class.

"A person is guilty of unlawful detainer as a wrongful possessor when he or she, first, 'wrongfully and without force dispossesses the person who has legal right to possession' and,

9

second, refuses to vacate 'after demand is made in writing for delivery of possession of the premises.'" *Adams*, 691 S.W.3d at 309 (quoting *Kocina v. Johannes*, 505 S.W.3d 474, 478 (Mo. App. W.D. 2016)); *see also* § 534.030.1. In the present case, there are two competing contracts that relate to Tarrillion's possession of the Property: the written 2024 Lease and the 2023 oral agreement as presented by Body Treats.

Tarrillion claims the 2024 Lease clearly demonstrates he is a co-tenant with contractual leasehold rights equal to those of Wehmeyer and Meyer's. On the other hand, Body Treats argues the 2024 Lease clearly names the "Tenant" as Body Treats, the LLC, and Tarrillion was neither a tenant under the express terms of the 2024 Lease nor a member of Body Treats. Body Treats explains Tarrillion was referenced in the Lease so that he could serve as an "authorized agent" of Body Treats in the absence of Meyer and Wehmeyer. Additionally, Body Treats asserts that, pursuant to the parties' oral agreement, Tarrillion was a month-to-month sublessor and worked at Body Treats as an independent contractor. As a result, Body Treats contends the notice it sent to Tarrillion terminating the parties' oral agreement effectively terminated Tarrillion's month-to-month tenancy and his lawful right to possession of the Property.

We find Body Treats' arguments unpersuasive and contradictory. On one hand, Body Treats claims Tarrillion is neither a member nor otherwise associated with its limited liability corporation, and maintains that, pursuant to their oral agreement, he is a sublessor of the Property acting as independent contractor. On the other hand, Body Treats does not challenge the validity of the 2024 Lease and explains Tarrillion's name and signature appear on the 2024 Lease because he served as its "authorized agent," which, suggests he is, in fact, associated with its limited liability corporation. In essence, Body Treats requests that this Court "cherry pick" parts of its oral

10

agreement and the 2024 Lease to alleviate the inconsistencies in their argument. This we cannot do.

Body Treats' argument that Tarrillion was a sublessee pursuant to the parties' oral agreement fails because the 2024 Lease expressly prohibits a tenant from subleasing without the landlord's prior written consent. Here, the record is absent of any written consent from Landlord authorizing a sublease of the Property.

Next, Body Treats focuses on the trial court's determination of the weight to be given the evidence and witness credibility. In particular, it asserts the trial court was able to weigh Tarrillion's testimony and "[a]nything put forward by Mr. Tarrillion did not outweigh the evidence put forth by [Body Treats] ...."[12] Body Treats is correct that the trial court was within its discretion to accept some, all, or none of Tarrillion's *testimony*. *See Veazie-Gallant v. Brown*, 620 S.W.3d 641, 649 (Mo. App. E.D. 2021) ("We will defer to the trial court's determination of the weight to be given the evidence and witness credibility."). But, this Court cannot ignore the express language of the 2024 Lease, which was also submitted into evidence and was before the trial court.

Pursuant to the 2024 Lease, Tarrillion is undoubtedly referenced as a tenant and guarantor – not a sublessee or agent of Body Treats. Specifically, Tarrillion signed his name under the block "TENANT[;]" Body Treats refutes this argument by asserting that, "[u]nder this label, the signature block requests, in express terms, the signature of an "authorized agent" on behalf of the 'tenant' (i.e., Body Treats Etc., LLC)." This is a disingenuous interpretation of the signature block as it titled, "TENANT" followed Wehmeyer, Tarrillion, and Meyer's signature. Then, a

---

[12] On the first day of trial, the trial court continued the trial to allow Tarrillion an opportunity to retain counsel. Yet, Tarrillion chose to continue without counsel. We understand the challenges trial courts face when one party is represented by counsel and the other insists on proceeding *pro se* as it has a duty to maintain a position of absolute impartiality and neutrality and cannot serve as advocate for a *pro se* litigant. However, this Court cannot selectively ignore evidence that was before the trial court.

separate line begins with "By:" followed by the title, "Authorized Agent." As shown below, the line to include the name and signature of the "Authorized Agent" is left blank.

IN WITNESS WHEREOF, the parties have hereunto set their hands the day and year first above written.

| LANDLORD | TENANT |
|---|---|
| Hoeckele 4, LLC | |
| By: *[signature]* <br> Joseph C. Hoeckele , Managing Partner | *[signatures: MATT TARRILLION, and others]* <br><br> By: _____ <br> , Authorized Agent |

Tarrillion also signed his name under a section titled "Notices to Tenant shall be addressed to" and signed his name under the block that listed his name as a guarantor of the 2024 Lease.

Notices to Tenant shall be addressed to:

*[handwritten]* Body Treats Etc
1516 Edgmont Blvd Suite 110
Perryville MO 63775
Attention: Dellie Wehmeyer
MATT TARRILLION
Jamie L Mey

GUARANTORS
*[signature]* Deborah D Wehmeyer
*[signature]* Jamie L Meyer

MATT TARRILLION *[signature]*

12

Tarrillion's initials also appear at the bottom of Exhibit B (the commercial building rules and regulations a tenant must abide by). Regardless of how Body Treats classifies its relationship with Tarrillion, "[i]t is the most basic principle of contract law that parties are bound by the terms of the contracts they sign …." *Lehman v. Auto. Invs., LLC*, 608 S.W.3d 733, 738 (Mo. App. E.D. 2020) (quoting *Smith v. Keystone Mut. Ins. Co.*, 579 S.W.3d 275, 280 (Mo. App. E.D. 2019)). While Tarrillion was not a member of or associated with the limited liability company, the 2024 Lease expressly provides he was a co-tenant of the Property. Based on the foregoing, this Court firmly believes the trial court's judgment is wrong as the 2024 Lease clearly established Tarrillion was not "wrongfully and without force, by disseisin" in possession of the Property as required to support Body Treat's unlawful detainer claim. *See Adams*, 691 S.W.3d at 308-09; § 534.030.1.

Given that Body Treats is unable to show Tarrillion was in wrongful possession of the Property, this Court need not discuss whether Tarrillion refused to vacate the Property after demand was made in writing. *See Adams*, 691 S.W.3d at 309. Accordingly, this Court holds the trial court's judgment entered in favor of Body Treats on its unlawful detainer action against Tarrillion is against the weight of the evidence.

Tarrillion's sole point on appeal is granted.

### Conclusion

The trial court's judgment is reversed and this case is remanded for proceedings consistent with this opinion.

_____
Michael S. Wright, Judge

John P. Torbitzky, C.J. and
Robert M. Clayton III, J. concur.

13